MELISSA INDUSTRIAL DEVELOPMENT CORPORATION, and City of Melissa, Texas, Plaintiffs,

v.

NORTH COLLIN WATER SUPPLY CORPORATION and United States Department of Agriculture, acting by and through Ann M. Veneman, Secretary of Agriculture, Defendants.

Civil Action No. 4:02–CV–345.

United States District Court, E.D. Texas, Sherman Division.

March 31, 2004.

Richard Mercer Abernathy, of Abernathy, Roeder, Boyd & Joplin, McKinney, TX, Ronald D. Stutes, of Brown & Hofmeister, LLP, Dallas, TX, for Plaintiffs.

James Wallace Wilson, of Rapier & Wilson, Allen, TX, Ruth Harris Yeager, U.S. Attorney's Office, Tyler, TX, Christine Cole Biederman, U.S. Attorney's Office, Plano, TX, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

SCHELL, District Judge.

This matter is before the court on "Plaintiff's Application for Injunctive Relief" [Dkt. # 2].

## I. BRIEF FACTS

Plaintiffs, the Cities of Melissa and McKinney, Texas, seek to enjoin Defendant North Collin Water Supply Corporation ("NCWSC") from accepting the proceeds of a loan and grant from the United States Department of Agriculture Rural Utility Service ("USDA RUS"). Specifically, Plaintiffs have moved for a preliminary injunction prohibiting Defendant NCWSC from:

(i) proceed[ing] with the consummation of the Loan or the Grant since the same was improperly authorized by the Special Meeting of the Membership of NCWSC held October 10, 2002, based on defects in the Notice, Ballot and Proxy and the lack of a favorable vote of a majority of the members;

(ii) reschedul[ing] any special meetings of the membership until this Court approves the form of notice, any proxy, and any ballot sought to be used in connection with said meeting; [and]

(iii) draw[ing] any funds, or alternatively, any additional funds, against the Loan or the Grant until such time as NCWSC demonstrates that its internal resources or those additional resources available to it from commercially available credit are insufficient or uncompetitive as sources of funds to fund the project for which the Loan and Grant were applied.

Pl.'s App. for Inj. Relief at 6–7.

For the reasons stated below, the court is of the opinion that Plaintiffs' request for preliminary injunction ought to be GRANTED IN PART and DENIED IN PART.

## II. PRELIMINARY INJUNCTION STANDARDS

Four requirements must be met in order to obtain a preliminary injunction. The party seeking the injunction must prove: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting

the preliminary injunction will not disserve the public interest." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 335 F.3d 357, 363 (5th Cir.2003) (citing *Canal Auth. v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974)).

In the Fifth Circuit, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Id.,* at 363–64 (citing *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir.1985)). "[A] preliminary injunction is 'an extraordinary remedy' which should only be granted if the party seeking the injunction has 'clearly carried the burden of persuasion' on all four requirements." *Id.*

## III. ANALYSIS

Consistent with the following opinion, the court finds that Defendant NCWSC ought to be enjoined from proceeding with the consummation of the disputed loan and grant as well as from drawing any funds, or alternatively, any additional funds, against the Loan or the Grant until such time that NCWSC holds another vote of its membership. Any such vote, however, must comply with both NCWSC bylaws and Texas statutory law. The court bases this opinion on the following reasoning.

### A. *Substantial Likelihood of Success on the Merits*

The court finds that Plaintiff City of Melissa has a substantial likelihood of success on the merits in this lawsuit based on the following arguments.

### 1. The "Official Proxy and Ballot Form" for the October 10, 2002, Special Membership Meeting Failed to Comply with NCWSC's Procedures and Bylaws

On October 10, 2002, NCWSC held a Special Membership Meeting for the purpose of voting on two resolutions. The first resolution regarded whether the membership of NCWSC wanted to accept a loan and grant from the USDA RUS, and the second resolution regarded certain changes to be made to NCWSC's 1992 bylaws. Pl.'s Ex. 10 at 1–2 (No. 4:02–CV–345). Plaintiff City of Melissa complains that NCWSC's notice of this meeting, containing the official ballot and proxy, failed to comply with NCWSC bylaws and procedures.

Two provisions of NCWSC's procedures and bylaws are relevant to this dispute. First, NCWSC's "Procedures for Conducting the Annual (Or Special) Meeting's of Members" states, "[a]t a minimum, the proxy forms shall contain ... sufficient information to describe the items requiring votes...." Def.'s Ex. 4 at 4 (No. 4:02–CV–345). Second, Article XX of NCWSC's 1992 bylaws states that "[n]otice of any amendment to be made at a special meeting of the Members must be given at least ten (10) days before such meeting and must set forth the amendments to be considered." Pl.'s Third Am. Compl., Ex. B at 18 (No. 4:02–CV–345).

Plaintiff City of Melissa complains that the notice and proxy mailed to NCWSC members violates these provisions by failing to adequately set forth the amendments to be made to the NCWSC bylaws. Pl.'s Application for Inj. Relief at 4.

Regarding the proposed bylaws changes, NCWSC's "Notice of Special Meeting of the Membership" stated that Resolution Two

relates to amended Bylaws required by the USDA in order to close the loan and fund the grant. A copy of the proposed amended Bylaws are available at the Corporations's office during normal business hours, Monday through Friday.

While the proposed revised Bylaws contain many "housekeeping" changes the primary revision is the addition of the following section. . . .

Pl.'s Ex. 10 at 1 (No. 4:02–CV–345). The notice then included the actual language of the "primary" amendment to the 1992 NCWSC bylaws but excluded the language of the "housekeeping" changes. *Id.*

Additionally, the proxy and ballot form described Resolution Two as follows:

Resolved that the Bylaws of the Corporation be amended pursuant to the requirements of the United States Department of Agriculture Rural Utility Service ("USDA–RUS") in order that the Corporation receive a loan from USDA–RUS in the amount of $1,420,000.00 and a grant of $850,000.00 for water system improvements.

*Id.* at 3. As with the notice, this language contains no further description of the "housekeeping" changes.

■ After comparing NCWSC's 1992 and 2002 bylaws, the court finds that many of the so called "housekeeping changes" appear unrelated to the funding of USDA loan and grant, contrary to the indication of the proxy and ballot form. For example, a new Section 5 was added to Article V, stating:

[i]n conducting their duties as members of the Board, Directors: (1) shall be entitled to rely, in good faith and with ordinary care, on information, opinion, reports, or statements, including financial statements and other financial data, concerning the Corporation or the Corporation's affairs that have been prepared or presented by one or more officers or employees of the Corporation, or by legal counsel, public accountants, or other persons retained by the corporation for the development of professional advice and information falling within such person's professional or expert competence; (2) may believe, in good faith and with ordinary care, that the assets of the Corporation are at least that of their book value; and (3) in determining whether the Corporation has made adequate provision for the discharge of its liabilities and obligations, may rely in good faith and with ordinary care, on the financial statements of, or other information concerning, any person or entity obligated to pay, satisfy or discharge some or all of the Corporation's liabilities or obligations; and may rely in good fait on information, opinions, reports, or statements, including financial statements and other financial data, prepared or presented by one or more Officers of the Corporation, legal counsel, public accountants, or other persons provided the Directors reasonably believe such matters fall within such person's professional or expert competence. Nevertheless, Directors must disclose any knowledge they may have concerning a matter in question that makes reliance otherwise provided herein to be unwarranted.

Pl.'s Ex. 17 at 3–4 (No. 4:02–CV–345). While not exhaustive of the "housekeeping" changes made. the foregoing is certainly an example of an addition to the NCWSC bylaws, which (1) does not appear to pertain to the USDA loan or grant, (2) was not set forth in either the notice or proxy, and (3) directly affects the rights of NCWSC members vis-a-vis those of the Directors. Because the court can find nothing in NCWSC's notice or proxy that would call a member's attention to this provision, as well as others, the court finds that Plaintiff City of Melissa has a substantial likelihood of prevailing on its claim that the "Official Proxy and Ballot Form" failed to contain "sufficient information to describe the items requiring votes" and

failed to adequately "set forth the amendments to be considered."

In addition to the court's own comparison of NCWSC's bylaws, NCWSC General Manager Knight testified that the failure to include the language of the housekeeping changes in the notice and proxy means that the notice and proxy did not comply with the 1992 bylaws. Tr. of March 5, 2004, Hr'g at 106:21–23. Though this is a legal conclusion, it does indicate that NCWSC recognizes the insufficiency of its notice.

For these reasons, the court finds that Plaintiff City of Melissa has a substantial likelihood of success on its claim that the notice and proxy for the October 10, 2002, Special Membership Meeting failed to comply with NCWSC procedures and by-laws. Under the 1992 bylaws, such a failure would entitle the City of Melissa to the following relief. Article XI, Section 1, states that "[f]ailure to hold or call an annual or special meeting in accordance with these By–Laws shall give each member rights to compel the Board of Directors to properly hold an annual or special meeting of the Membership." Pl.'s Ex. 9 at 13 (No. 4:02–CV–345). Thus, it appears that Plaintiff City of Melissa may succeed in its action to force NCWSC to properly re-hold its October 10, 2002, Special Membership Meeting.

2. **NCWSC Appears to Have Violated its 1992 Bylaws and the Texas Non–Profit Corporation Act by Failing to Make an NCWSC Membership List Available to the City of Melissa Prior to the October 10, 2002, Special Membership Meeting**

Article 13.96–2.11B of the Texas Non–Profit Corporation Act requires that

[n]ot later than two (2) business days after the notice is given of a meeting . . . and continuing through the meeting, the list of voting members must be available for inspection by any member entitled to vote at the meeting for the purpose of communication with other members concerning the meeting at the corporation's principal office or in the city where the meeting will be held. A voting member or voting member's agent or attorney is entitled to written demand to inspect and, subject to the limitations of Section B, Article 2.23, of this Act to copy the list at a reasonable time and at the member's expense during the period it is available for inspection.

Tex. Civ. St. Art. 13.96–2.11B.

The court has heard evidence that the October 10, 2002, meeting was noticed on September 9, 2002; that Plaintiff City of Melissa requested a membership list from NCWSC on October 1, 2002; and that NCWSC told Plaintiff City of Melissa that a membership list would not be available until October 14, 2002, which is four days after the vote on the resolutions that Plaintiff intended to use the list to defeat. Specifically, the court has before it a letter dated October 1, 2001, from Melissa Economic Development Corporation ("MEDC") to NCWSC in which MEDC requests a copy of NCWSC's membership list pursuant to Article 13.96–2.11B of the Texas Non–Profit Corporation Act. Pl.'s Ex. 12 at 1 (No. 4:02–CV–345). The court also has heard the testimony of the City of Melissa's Mayor, David Dorman, who testified that he requested that MEDC send the October 1, 2002, letter to NCWSC because his own secretary was out of the office at that time dealing with a family matter. The court has already found, in a previous order, that MEDC was also a member of NCWSC at the time Mayor Dorman requested the letter to be drafted.

The court heard no evidence contradicting the Mayor's testimony.

In response to the letter drafted at the request of Mayor Dorman, NCWSC mailed a response to MEDC stating only, "[t]he information you requested will be available on Monday, October 14, 2002, no later than 2:00 p.m." Pl.'s Ex. 13 at 1 (No. 4:02–CV–345). In other words, on October 3, which was seven days prior to the NCWSC Special Membership Meeting, NCWSC informed one of its members that access to a NCWSC membership list would not be available until four days after the meeting, thus precluding the member's ability to use that list "for the purpose of communication with other members concerning the meeting."

■ According to Article 13.96–2.11B, this list was supposed to be available at NCWSC's principal office no later than two days after the meeting was noticed, which would have been September 11, 2002. Accordingly, the court finds it substantially likely that Plaintiff will succeed in demonstrating that Defendant NCWSC failed to comply with Article 13.96–2.11B of the Texas Non–Profit Corporation Act.

### 3. The Court Rejects Plaintiff City of Melissa's Remaining Arguments

Plaintiff City of Melissa has argued that Defendant NCWSC selectively mailed notice of the October 10, 2002, meeting to certain members of NCWSC. Plaintiff, however, has presented no evidence to substantiate this claim. Instead, Plaintiff has submitted to the court a video tape that contains footage of the Special Membership Meeting, at which certain members supposedly state that they never received the mailed notice of the meeting. While the court acknowledges the possibility that Plaintiff City of Melissa may prove that some NCWSC members did not receive written notice of the October 10, 2002, meeting, the court cannot leap from such a fact to the conclusion that NCWSC intended for those members not to receive notice. Plaintiff has failed to carry its burden on this argument.

Plaintiff City of Melissa has also argued that the notice of the October 10, 2002, Special Membership Meeting violates Article XII of the 1992 bylaws, which requires that "[p]rior to convening any special meeting of the Members, the President shall request in writing that the Secretary–Treasurer give at least ten (10) days prior notice to the Members...." Pl.'s Ex. 9 at 14 (No. 4:02–CV–345). It is true that, in this case, the notice of the Special Membership Meeting was issued by the NCWSC Board of Directors. *See* Pl.'s Ex. 10 at 2 (No. 4:02–CV–345). This does not mean, however, that the notice was not also issued by the Secretary–Treasurer in accordance with the 1992 bylaws. During the hearing, Defendant NCWSC's counsel represented to the court that the Secretary–Treasurer of NCWSC is now, and has been at all relevant times, a member of the NCWSC Board of Directors. Because the court has heard no testimony indicating that the Secretary–Treasurer of NCWSC disapproved of the notice, proxy or ballot, the court cannot find that the notice, proxy and ballot violate Article XII. As long as the Secretary–Treasurer is part of the group that issued the notice, the Secretary–Treasurer participated in its issuance.

■ Regardless, the court cannot find that any of the NCWSC members' substantive rights have been violated by the fact that the notice stated that it originated from the Board of Directors of NCWSC rather than solely from the Secretary–Treasurer.

Plaintiff has also taken issue with the wording of the proxy, which indicates that any member returning the proxy form empowers the Credentials Committee "to cast my vote as indicated below." Pl.'s Ex. 10 at 3 (No. 4:02–CV–345). Plaintiff claims

that this statement authorizes the Credentials Committee to vote in violation of Article XI, Section 2, of the 1992 bylaws, which establishes the powers of the NCWSC Credentials Committee. Pl.'s Ex. 9 at 13 (No. 4:02–CV–345). It is true that Article XI, Section 2, does not allocate the power to vote to the Credentials Committee, but instead gives the Credentials Committee only three powers: (1) approve the proxy form, (2) validate proxies, and (3) canvass votes. *Id.*

■ However, this argument will not assist the Plaintiff. Merriam Webster's Collegiate Dictionary defines the verb "to vote" as follows: "to express one's views in response to a poll. . . ." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1325 (10th ed.1997). Under no reading of this definition could the Credential's Committee be deemed to have voted at the October 10, 2002, Special Membership Meeting because the Credentials Committee did not exercise any choice or "express any views" with regard to the outcome of the vote. The court has heard no evidence to the contrary, and the court finds therefore that the Credentials Committee has done nothing more than canvass or count votes, which is in accordance with its Article XI, Section 2, powers.

Next, Plaintiff has argued that the proxy form is invalid because it was not adopted by the Credentials Committee. Article XI, Section 2, of the 1992 bylaws states that the Credentials Committee "shall . . . adopt a specific proxy form to be used in conducting an annual or special Membership meeting." Pl.'s Ex. 9 at 13 (No. 4:02–CV–345). Plaintiff, however, has produced no evidence indicating that the Credentials Committee did not, in fact, adopt the proxy. Instead, Plaintiff has merely pointed out the absence of evidence indicating that the Credentials Committee did adopt the proxy. Such a showing, however, is not sufficient to meet Plaintiff's burden of persuasion. *Karaha Bodas Co., L.L.C.,* 335 F.3d at 363.

Finally, Plaintiff has argued that the proxy form adopted by the NCWSC Board of Directors violates Texas Water Code Section 67.007(c) because it contains certain differences from the "Sample Proxy and Ballot Form" contained in Defendant's "Procedures for Conducting the Annual (or Special) Meetings of Members." Texas Water Code Section 67.007(c) states, "[t]he board shall adopt an official proxy and ballot form to be used in conducting the business of the corporation at any annual or special meeting. No other proxy or ballot form will be valid." Water Code § 67.007(c).

Plaintiff City of Melissa has argued that the sample proxy form contained in Defendant's "Procedures for Conducting the Annual (or Special) Meetings of Members" *is* Defendant's official proxy form. Defendant, on the other hand, argues that the actual proxy form sent to the members regarding the disputed vote *is* the official proxy form.

■ The court finds Plaintiff's argument unpersuasive. Texas Water Code Section 67.007(b) states that the board of directors of a water supply corporation "shall adopt written procedures for conducting an annual or special meeting of the members or shareholders" and prescribes that the procedures include the following:

(1) notification to eligible members or shareholders of the proposed agenda, location, and date of the meeting;

(2) establishment of a quorum consisting of proxies and the votes of members or shareholders present;

(3) nomination and election procedures;

(4) approval of the proxy and ballot form to be used; and

(5) validation of eligible voters, proxies, ballots, and election results.

Water Code § 67.007(b). Sub-section (b)(4) does not require that board of directors adopt a single "official proxy form" that will be used for every corporate vote ever held. Rather, § 67.007(b)(4) requires the water supply corporation's board to adopt *procedures* for the approval of official proxy and ballot forms. This portion of § 67.007 is the portion requiring Defendant NCWSC to adopt its "Procedures for Conducting the Annual (or Special) Meetings of Members."

Section 67.007(c), on the other hand, requires the adoption of an official proxy and ballot form to be used in the conduct of official business. Subsection (c) does not specify that this official proxy and ballot form must appear within the water supply corporation's "procedures for conducting an annual or special meeting." Neither does subsection (c) require a water supply corporation to use the same official proxy and ballot for every election. It merely specifies that, for the conduct of corporate business at any special or annual meeting, an official ballot and proxy must be adopted. Presumably, this official ballot and proxy must be adopted consistent with the procedures contained within the procedures manual required by subsection (b).

In NCWSC's "Procedures for Conducting the Annual (or Special) Meetings of Members," Section 2(B)(1) specifies that for special or annual meetings, the "Official Proxy and Ballot Form shall be in a form similar to that of Attachment 2 in the Appendix," which is the sample proxy form the court referenced above. Def.'s Ex. 4 at 4 (No. 4:02–CV–345). Because this procedure states that the official proxy must only be similar and not identical to the sample form attached in Appendix 2, the court cannot find that Defendant NCWSC's official proxy from the October 10, 2002, Special Membership Meeting is invalid merely because it contains some language that differs from the language of the sample proxy form.

Instead, the court finds that the official proxy form actually used by Defendant NCWSC is similar to NCWSC's sample proxy form. As such, NCWSC has satisfied its obligations under § 67.007 as well as its own procedures.

**4. The Court Finds Insufficient Evidence to Support the City of McKinney's Argument that NCWSC Improperly Held its Required Public Hearing**

The City of McKinney has proffered an argument that the public hearing, which NCWSC was required to hold prior to accepting the disputed loan and grant from the USDA, began about three hours late and lasted only for one minute because no citizens were present at the time the meeting began. While the City of McKinney has offered evidence that this meeting in fact began late, *see* Tr. of March 5, 2004, Hr'g at 148:24–151:9, the City of McKinney has offered no evidence indicating that this hearing began late for any unlawful purpose. Neither has the City of McKinney offered any evidence indicating that any actual citizen was denied his or her right to attend this hearing. Without such evidence, the court is free to imagine any number of legitimate reasons the disputed public hearing may have begun late and ended quickly. Perhaps no citizens arrived to participate. Regardless, the City of McKinney has failed to carry its burden on this argument.

**B. *Substantial Threat That Plaintiff Will Suffer Irreparable Injury if the Injunction is Not Granted***

If this injunction were denied, Plaintiff City of Melissa would suffer irreparable

injury to its right, granted by NCWSC bylaws, to participate in the governance of NCWSC.

Without the injunction, Defendant USDA would fund the loan to Defendant NCWSC, which could not be undone. After this loan is funded, NCWSC's CCN would become collateral for the loan as a function of 7 U.S.C. § 1926(b), which states,

> [t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan.

Regarding this provision, the Fifth Circuit has held that, as a matter of Texas law, a rural water supply corporation "mak[es] service available" to every customer within its CCN. *North Alamo Water Supply Corp. v. City of San Juan, Texas,* 90 F.3d 910, 915–16 (5th Cir.1996). Thus, encroachment on any portion of NCWSC's CCN, whether by competition or regulation or adverse condemnation, is prohibited by § 1926(b), regardless of whether NCWSC is actually supplying water to that portion of its CCN or not. Apparently, "[t]he service area of a federally indebted water supply association is sacrosanct." *Id.,* at 915. In this case, it is possible that it would remain so for 40 years, which is the term of the USDA loan to NCWSC.

The court has heard testimony, however, that § 1926(b) would not completely prohibit the Cities of Melissa and McKinney from annexing portions of the NCWSC CCN for the entire 40 years. Indeed, 7 C.F.R. § 1951.226, sets forth conditions for the "cash sale of all or a portion of a borrower's assets or an exchange of security property," which was otherwise being used to secure a USDA RUS loan. The court has before it insufficient information to identify the exact effect this loan would have on any given portion of the NCWSC CCN, but it appears generally that, after the loan is made, the Cities of Melissa and McKinney would only be able to acquire portions of the NCWSC CCN to the extent that a USDA administrator makes certain determinations, including: "(1) [t]he consideration is adequate; (2)[t]he release will not prevent carrying out the purpose of the loan; [and] (3)[t]he remaining property is adequate security for the loan or the transaction will not adversely affect FmHA or its successor agency under Public Law 103–354's security position." 7 C.F.R. § 1951.226(b)(1)-(3). In other words, as long as the loan is outstanding, neither the City of Melissa nor the City of McKinney could acquire NCWSC CCN without USDA approval. Plaintiffs have argued that this drives up the cost of the CCN. To the extent that this is true, the regulations appear to leave the determination of the actual cost increase for any given portion of CCN within the discretion of the USDA RUS.

Regardless, it appears that the funding of this loan could, at the very least, inconvenience the Cities of Melissa and the City of McKinney for a period of up to 40 years. At worst, the loan could impose on the City of Melissa and the City of McKinney a heavy financial burden if and when those cities acquire chunks of NCWSC CCN. And if the City of Melissa and the City of McKinney cannot acquire certain portions of the NCWSC CCN for which those cities already have CCNs to provide sewer services, the cities' representatives have testified that they will not be able to provide sewer service to certain burgeoning developments, which may stifle the cities' growth.

Though the court has before it insufficient evidence to find that any of these possible outcomes are foregone conclusions, the court can say that the City of Melissa had a right, as a member of NCWSC, to take action to prevent the NCWSC membership from voting to accept the USDA loan. The City of Melissa was denied this right when NCWSC failed to supply the City of Melissa, through MEDC, with a copy of the NCWSC membership list, which would have enabled the City of Melissa to lobby against the vote. Because this list was not presented until the date of the actual meeting and vote, it is impossible to determine whether the City of Melissa could have succeeded. If the City of Melissa could have succeeded, the City of Melissa could have avoided all of these alleged, potential injuries.

If the injunction is not granted, the City of Melissa's arguments about the propriety of the Special Membership Meeting and vote will become moot because even a favorable outcome on the merits could not un-fund the USDA loan. As such, the City of Melissa would have no remedy for NCWSC's violation of Article 13.96–2.11B of the Texas Non–Profit Corporation Act.

## C. *The Threatened Injury to Plaintiff Outweighs the Threatened Harm the Injunction May Do to Defendant*

The court has heard evidence from both parties regarding the harm they will potentially suffer if the court rules against them on the issue of this preliminary injunction. For example, and as described above, Plaintiffs have argued that if the loan and grant are not enjoined, USDA regulations will collateralize NCWSC's CCN (or service area) to the USDA loan, which may prevent the cities from expanding into the NCWSC service area for up to 40 years. On the other hand, NCWSC has argued that enjoining the loan and grant will injure NCWSC customers who are depending on the loan and grant for improvements to be made to the NCWSC system, which would not otherwise be made immediately by the cities. NCWSC has also argued that granting the injunction raises the cost of their proposed development project because the cost of their supplies is currently rising.

Without more, the court could not say that the threatened injury to the Plaintiffs outweighs the harm the injunction may cause to the Defendants. The equation for balancing these harms requires the resolution of several variables that the court is unequipped to resolve, such as the rate at which NCWSC would actually pay off its loan to the USDA, the rate at which the Plaintiff cities would actually expand into the NCWSC CCN, the value that the USDA would require Plaintiffs to pay for those annexed portions of NCWSC CCN, the rate at which NCWSC's cost of necessary materials will increase or decrease in the immediate future, the value of the NCWSC system upgrades to each individual NCWSC customer over the remainder of time required to complete this lawsuit (which is itself uncertain), *etcetera*. At present, the court has insufficient evidence to mathematically resolve many aspects of this inquiry.

However, the court assumes that the harm to Defendant NCWSC resulting from the issuance of a preliminary injunction may be fairly limited by the Defendant. Because the court does not intend to enjoin NCWSC from calling another Special Membership Meeting in compliance with its procedures and bylaws, the court assumes that NCWSC could limit its harm by calling such a meeting quickly if

it so desires. A properly noticed and conducted meeting would moot many of the injuries alleged by Plaintiff and the obstacles preventing NCWSC from proceeding with this loan.[1]

Aside from the alleged financial injuries, Plaintiff City of Melissa has also suffered the additional harm of having been subjected to the results of an improper vote of the NCWSC membership. Based on the evidence before the court, it appears that NCWSC violated Plaintiff City of Melissa's rights by failing to adequately notice the October 10, 2002, Special Membership Meeting and by denying the City of Melissa its right to access to an NCWSC membership list, which Plaintiff could have used to solicit votes against the NCWSC resolutions. Though it is difficult to ascribe a monetary value to these rights, the court believes that they are significant nonetheless.

Based on the foregoing, the court concludes that the threatened injury to Plaintiff City of Melissa outweighs the threatened harm the injunction may do to Defendant NCWSC.

## D. *Granting the Preliminary Injunction Will Not Disserve the Public Interest*

On the one hand, NCWSC has argued that the public interest would be disserved by this injunction because it will prohibit or delay the implementation of necessary improvements to its water delivery system, which harms NCWSC customers. Because NCWSC has the option to recall its Special Membership Meeting to conduct a proper vote on its resolutions with the expediency that it deems that its membership deserves, the court cannot find that the public interest would be significantly disserved by this preliminary injunction.

On the other hand, failure to grant the injunction would be like rewarding NCWSC for failure to follow its own by-laws and state statutes. As such, the court finds that granting the injunction will not disserve the public interest.

## IV. CONCLUSION

For the reasons described above, Plaintiffs' motion for preliminary injunction is GRANTED IN PART and DENIED IN PART.

Defendant NCWSC is hereby enjoined from proceeding with the consummation of the Loan or the Grant and from drawing any funds, or alternatively, any additional funds, against the loan or the grant. NCWSC is NOT enjoined from rescheduling any special meetings of its membership. In any future special meeting, however, NCWSC shall adequately comply with all applicable laws, bylaws and procedures for the conduct of such a meeting.

It is so ORDERED.

---

1. At this time, the court does not comment on whether or not the USDA may properly fund this loan and grant. Rather, the court is only addressing whether NCWSC may properly accept the loan and grant.