

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00425-CV

-----------

DENTON COUNTY ELECTRIC          APPELLANT AND APPELLEE
COOPERATIVE, INC. D/B/A
COSERV ELECTRIC

V.

NICOLE HACKETT, INDIVIDUALLY       APPELLEE AND APPELLANT
AND ON BEHALF OF OTHERS
SIMILARLY SITUATED

-----------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

-----------

## OPINION

----------

## I. Introduction

In this interlocutory appeal,[1] Appellant Denton County Electric Cooperative, Inc. d/b/a CoServ Electric (CoServ) raises six issues, complaining that the trial court erred by certifying this case as a class action. We vacate the trial court's

-----------

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3) (West 2008 & Supp. 2011).

class certification order and remand the case to the trial court for further proceedings.[2]

## II. Factual and Procedural History

The underlying issue in this class certification appeal involves the rights of members of an electric cooperative and the statutory, fiduciary, and contractual duties, if any, owed by the cooperative to its members.

### A. The Parties

CoServ is a member-owned, nonprofit electric cooperative formed under the Texas Electric Cooperative Corporation Act (ECCA). *See* Tex. Util. Code Ann. §§ 161.001–.254 (West 2007). It has approximately 135,000 members, comprised of a diverse socio-economic and demographic group of residential users as well as commercial and public users.

Appellee Nicole Hackett is a CoServ member. Mark Glover and Janice Brady, also CoServ members, are parties in the proceeding below. Glover is a former CoServ director, and Brady unsuccessfully campaigned in June 2008 for election to CoServ's board.

### B. The Litigation

In 2008, a CoServ member complained about receiving a robo-call from Brady on his unlisted phone number during Brady's election campaign. CoServ investigated, and Brady admitted that she possessed members' personal

---

[2]Because of our disposition with regard to CoServ's issues, we do not reach Nicole Hackett's three issues regarding the trial court's decisions on appointment of class counsel and bifurcation. *See* Tex. R. App. P. 47.1.

information but refused to disclose her source. In February 2009, Glover admitted that he had provided Brady with the members' personal information.

Brady filed a class action suit against CoServ in February 2009, alleging, among other things, that CoServ breached its fiduciary duty by undermining the cooperative's democratic process in its refusal to make its members' contact information available to nonincumbents running for election to CoServ's board of directors. CoServ removed the suit to federal court[3] and initiated the instant suit in state court against Glover, alleging that Glover had released "CoServ's confidential and proprietary information" in violation of CoServ's policy to protect its members' personal information (Policy No. 310)[4] and had made an unauthorized release of confidential real estate information. CoServ's claims against Glover included breach of fiduciary duty, misappropriation of trade secrets, and conversion of CoServ's property, conspiracy to commit these acts, and breach of his 2005 and 2008 directorship agreements.[5]

---

[3]*See Brady v. Denton Cnty. Elec. Co-op., Inc.*, No. 4:09-CV-130, 2009 WL 3151177, at *7 (E.D. Tex. Sept. 28, 2009) (remanding case to state court).

[4]Policy No. 310 provides that information that is of a confidential corporate nature will not be provided to the membership, such as "[t]he names and addresses or telephone numbers of members, past and/or current" or "[a]ny information which constitutes a trade secret, process, program, trademark, or other legally protectable confidential information, or thing owned, or protected in confidentiality by contract, by the Cooperative."

[5]CoServ alleged that Glover requested a copy of the members' personal information while he was an incumbent director running against a challenger. The board gave Glover the information with restrictions. Glover was re-elected

3

Glover filed a counter-petition on his own behalf and on behalf of a class consisting of "[a]ll current members of Denton County Electric Cooperative, Inc. entitled to vote in board elections," excluding the trial court judge, CoServ, and its officers, employees, and directors other than Glover.[6] He alleged that CoServ failed to provide its members with open meetings, open records, and fair voting for board elections by failing to disclose information about CoServ to the members, and that CoServ had subverted the election process in favor of incumbent directors. Glover contended that the entrenched "old guard" board was nearly the same as the board that had driven CoServ into bankruptcy in 2002 and that "continue[d] to put management interests ahead of the interests of the members to whom it owe[d] a fiduciary duty."

Brady filed a petition in intervention, seeking a declaratory judgment that CoServ had a duty to provide challengers with all voter lists and other information available to incumbent directors; that CoServ's member contact information is not confidential, a trade secret, or otherwise privileged from disclosure to other members; that Policy No. 310 violates state law; that providing member

and then asked for more detailed information on voters in the 2005 and 2006 elections so that he could analyze it to "understand who is voting and why."

[6]Glover also sued on behalf of an equity subclass—"[a]ll current and former members who have furnished revolving equity capital that has been taken in whole or in part by CoServ's 'discounting' program or other unlawful acts alleged herein," but because the trial court did not certify this subclass, and no one appeals the denial of certification as to this class, the equity subclass is not pertinent to our resolution here.

4

information to a person running for election to the board of directors conforms with state law and does not violate a board member's fiduciary duties; and that CoServ member information is not CoServ's property.

The trial court denied CoServ's motion to strike Brady's petition in intervention or, in the alternative, to stay Brady's lawsuit based on Brady's similar suit formerly pending in the federal court. CoServ subsequently filed an amended petition against Glover and an original verified petition against Brady, alleging trade secret misappropriation, conversion, and "conspiracy/aiding and abetting" by Glover and Brady and breach of fiduciary duty and breach of contract by Glover.

Brady filed an amended petition and Hackett combined her original petition in intervention with Brady's amended petition. They referred to themselves collectively as "Class Plaintiffs," defined the voting subclass, listed their common questions of law and fact for the class, and made claims for breach of fiduciary duty, statutory duties, and contract, as well as for conversion, oppression, and fraudulent concealment.

CoServ complained that Hackett and Brady lacked standing and argued that Brady, Hackett, and Glover were inadequate class representatives, that there were irreconcilable conflicts among the members of the putative class, that a class action was not the superior method of adjudicating the dispute, and that common questions did not predominate over individual issues.

5

Brady and Hackett filed Brady's second amended petition and Hackett's first amended petition in intervention on August 31, 2009, the same day that the trial court began the five-day hearing on class certification. Their new petitions omitted the claim for breach of statutory duties. Nonetheless, on November 6, 2009, the trial court signed an order certifying the class under rule of civil procedure 42(b)(2) that included the statutory duties claim as an issue.

The order set out the following:

IT IS ORDERED, ADJUDGED AND DECREED that the Voting Subclass is comprised of:

All persons who or entities that currently are members of Denton County Electric Cooperative, Inc. d/b/a CoServ Electric ("CoServ"); but excluding CoServ, any and all CoServ affiliates, officers, directors, and employees of CoServ, members of this Court, the attorneys in this case, and members of the immediate families of any of the excluded individuals.

In determining to certify the Voting Subclass, the Court makes the following findings:

1. The Voting Subclass is comprised of approximately 135,000 members. Joinder of each of them individually is impracticable.

2. There are multiple questions of law and fact that are common to the Voting Subclass. Some of them include:

- Whether the CoServ bylaws and/or policies relating to governance, director elections, and voting constitute enforceable contracts between CoServ and the Voting Subclass;
- Whether CoServ materially breached its contractual relationship(s) relating to governance, director elections, and voting with the Voting Subclass;
- Whether CoServ is a fiduciary of the Voting Subclass;
- Whether CoServ breached its fiduciary duty to the Voting Subclass;

6

- Whether CoServ has a statutory duty to the Voting Subclass vis-à-vis governance, director elections, and voting procedures;
- Whether CoServ breached its statutory duty to the Voting Subclass in connection with the cooperative's governance, director elections, and voting procedures;
- Whether CoServ's Policy 310 as currently interpreted by CoServ violates voting sub-class members' rights [of] access to members' information for use in connection with CoServ's Board of Director Elections and other proper cooperative purposes;
- Whether CoServ's policies and practices fall short of providing the access to its books and records to which the Voting Subclass members are entitled;
- Whether CoServ's practice of providing vote tallies to management and board members during CoServ Board Elections violates CoServ's obligation to maintain democratic control over the cooperative;
- Whether CoServ violated its own policies regarding voting, balloting, vote counting, etc. in a manner that violates its obligation to provide democratic operation of CoServ to its members;
- Whether CoServ's practice of allowing unequal access to member information violates its obligation to provide democratic operation of CoServ to its members;
- Whether the CoServ election practices are fair and/or democratic;
- Whether the CoServ election policies as written and/or applied are fair and/or democratic;
- Whether CoServ's polices as written and/or its practices of interim appointment of directors are fair and/or democratic;
- Whether CoServ's policies as written and/or its practices wrongfully delegate decision making and/or control of CoServ to management rather than the democratically elected Board of Directors;
- Whether the Voting Subclass is entitled to a judicial determination of the legal and equitable obligations owed by CoServ to its members as alleged.

. . . .

7

4.     The claims of Nicole Hackett are typical of those of the Voting Subclass.  Nicole Hackett is a current CoServ member and has standing.  All class members of the Voting Subclass are CoServ members and thus are impacted if CoServ does not operate democratically or its election policies and/or practices are unfair to its members.  Any claims related to these issues are typical within the Voting Subclass.  There are no conflicts between Nicole Hackett and the other members of the Voting Subclass.

5.     Nicole Hackett is an adequate Voting Subclass representative.  She is a CoServ member who has demonstrated that she will represent the Voting Subclass members' interests and advocate for the best interests of the class.  She understands and accepts her fiduciary role as to the class, as well as her proper relationship with class counsel.  She has demonstrated an adequate understanding of the Voting Subclass claims.  She will (and has) participated in settlement discussion, and attended previously court ordered mediation.  She has retained adequate class counsel.

The order also set out the declarations sought by the class representative before stating that the entitlement to the declaratory, injunctive, and other relief sought by the Voting Subclass could be determined by applying the law to the facts common to the entire class, including the following:

As described more specifically below, the Class Representative has alleged claims seeking declaratory, injunctive and other relief regarding certain rights of members to member contact information in the context of cooperative director elections and other information of the cooperative regarding its governance and business practices.

. . . .

The Class Representative seeks at least the following declarations regarding CoServ's governance practices on behalf of the voting subclass:

(1) CoServ's Policy 310 as currently interpreted by CoServ violates Voting Subclass members' rights to access to members['] information for use in connection with Coserv's Board of Director Elections and other proper cooperative purposes;

8

(2) CoServ's policies and practices fall short of the access to its books and records to which the Voting Subclass members are entitled;

. . . .

(5) CoServ's practice of allowing unequal access to member information violates its obligation to provide democratic operation of CoServ to its members;

. . . .

(19) CoServ has a statutory duty to the Voting Subclass vis-à-vis governance, director elections, and voting procedures; and

(20) CoServ breached its statutory duty to the Voting Subclass vis-à-vis governance, director elections, and voting procedures.

The trial court indicated in its order that it would determine whether Texas corporate governance statutes and common law applied to an entity formed under chapter 161 of the utilities code.[7]

Hackett filed a second amended petition in intervention after the trial court signed the certification order and one day before CoServ filed its notice of this interlocutory appeal. In her new petition, which she filed individually and as class representative of the Voting Subclass, Hackett set out claims for declaratory and injunctive relief, breach of fiduciary duty, breach of contract, and fraudulent concealment. She also renewed the claim for breach of statutory duties and

---

[7]The class certification order also included a statement by the trial court that it intended to bifurcate the Voting Subclass claims "from any other claims or counterclaims made by parties in this case and to try the Voting Subclass case first, in order to avoid prejudice to the Voting Subclass." However, in the trial plan attached to the order, the trial court lined out the provision regarding bifurcation.

sought attorney's fees.[8]  Hackett moved for approval of the class notice, which the trial court granted.  The common issues set out in the class notice parallel those included in the class certification order.  CoServ then appealed the trial court's order on Hackett's motion for class certification and trial plan.

### III.  Class Certification

In its fourth issue, CoServ contends that the trial court misunderstood or failed to consider the law underlying the substantive claims made by Hackett and therefore granted class certification based on faulty assumptions.  This issue is dispositive.  However, before we may reach it, we must determine whether CoServ is correct in the part of its third issue in which it argues that the trial court's order and trial plan do not satisfy *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425 (Tex. 2000), because the order recites proposed declarations that are not supported by the pleadings on some of Hackett's substantive claims.

### A.  Live Pleading

At the hearing on the proposed class certification order, two months after the class certification hearing, CoServ raised the same complaint that it does on appeal, that "many of [the] proposed declarations [in the certification order] were not supported by the pleadings on file at the time.  For example, Declarations 7–

_____

[8]Additionally, Hackett filed a motion for leave to allow class counsel to associate with outside counsel for purposes of any appellate work relating to class certification, which the trial court denied and which she now complains about in her appeal.  However, as noted above, because we vacate the trial court's class certification order, we do not reach the issues Hackett presents in her appeal.  *See* Tex. R. App. P. 47.1.

8, 11, and 13–20 are not supported by the pleadings that were on file at the time of the class hearing." Here, we are concerned only with Declarations 19 and 20, as set out above in our recitation of the facts.

As a general rule, an amended pleading supersedes the original pleading. *See Conn v. Rhodes*, No. 02-08-00420-CV, 2009 WL 2579577, at *3 (Tex. App.—Fort Worth Aug. 20, 2009, no pet.) (mem. op.) (citing Tex. R. Civ. P. 65, and *Sheerin v. Exxon Corp.*, 923 S.W.2d 52, 55 (Tex. App.—Houston [1st Dist.] 1995, no writ) (op. on reh'g)). Under this rule, a party may voluntarily dismiss claims by omitting them from the amended pleading. *Id*.; *see FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 634 (Tex. 2008) (noting that an amended pleading effects a voluntary dismissal of claims not included in the amended pleading). And, generally, under civil practice and remedies code section 51.014, we consider the live pleading on file at the time the trial court entered its appealable interlocutory order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014; *City of Arlington v. Randall*, 301 S.W.3d 896, 906 (Tex. App.—Fort Worth 2009, pet. denied) (setting out claims from the live pleading on file when the trial court denied the city's plea to the jurisdiction); *see also Presbyterian Cmty. Hosp. of Denton v. Smith*, 314 S.W.3d 508, 511 (Tex. App.—Fort Worth 2010, no pet.) (setting out claims from live pleading at the time of the second hearing on the hospital's motion to dismiss).

On August 31, 2009, the first day of the class certification hearing, Brady and Hackett filed Brady's second amended petition and Hackett's first amended

11

petition in intervention. This document constituted the live pleading when the trial court issued its class certification order. The pleading did not include a specific claim for breach of statutory duties, unlike the immediately preceding pleading filed in July 2009. However, the new pleading still set forth the facts that are the basis of the breach of statutory duties claim, and it is clear from the record of the five-day hearing on Brady and Hackett's class certification motion that breach of statutory duties was an issue upon which they sought relief—the equivalent of being tried "by consent." *See, e.g.*, Tex. R. Civ. P. 67 (stating that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings). Therefore, we overrule this portion of CoServ's third issue.[9]

## B. Substantive Law

In its fourth issue, CoServ specifically complains that the trial court improperly certified the class based on a significant misunderstanding of the law

---

[9]Not long after the hearing on the proposed class certification order and before CoServ filed its notice of this interlocutory appeal, Brady and Hackett amended their petition, re-adding the breach of statutory duties claim. Therefore, it would be a useless act on our part to reverse the class certification order on this basis merely because the trial court committed a technical error by signing a flawed order that now matches the subsequently filed pleading, only to have to review the same substantive legal issues later. *See, e.g., Davis v. Hemphill*, 243 S.W. 691, 694 (Tex. Civ. App.—Fort Worth 1922, no writ) (op. on reh'g) (stating that it would be a useless act on the court's part to reverse the judgment just because the trial court committed a technical error in overruling a motion for further time); *see also Wheeler v. Duke*, 29 Tex. Civ. App. 20, 23, 67 S.W. 909, 911 (Tyler 1902, no writ) ("[A] court is never required to perform a vain and useless act.").

because it owes no fiduciary duty to its members; it has no contract with its members via its bylaws; oppression is not a viable claim; and it owes no statutory duties to its members under the ECCA. Hackett responds that CoServ owes contractual, statutory, and fiduciary duties to its members and that she has abandoned her claim for oppression.

### 1. Standard of Review

Rule of civil procedure 42 governs class actions in Texas. *See* Tex. R. Civ. P. 42. We review the trial court's certification for an abuse of discretion. *Sw. Bell Tel. Co. v. Marketing on Hold, Inc.*, 308 S.W.3d 909, 915 (Tex. 2010). However, we do so "without indulging every presumption in favor of the trial court's decision." *Stonebridge Life Ins. v. Pitts*, 236 S.W.3d 201, 204–05 (Tex. 2007) (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002), and *Bernal*, 22 S.W.3d at 434–35, 439). "Actual conformance with Rule 42 is indispensable, and compliance with the rule must be demonstrated, not presumed." *Id*. at 205.

Prior to ruling on a motion for class certification, courts must perform a "rigorous analysis" to determine whether all prerequisites to certification have been met, and a cautious approach to class certification is essential. *Bernal*, 22 S.W.3d at 435; *see also Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 671 (Tex. 2004) (applying *Bernal* to rule 42(b)(2) certifications). It is improper to certify a class without knowing how the claims can and will likely be tried, and to make a proper analysis, the court must understand the claims, defenses,

13

relevant facts and applicable substantive law to make a meaningful determination of the certification issues. *Bernal,* 22 S.W.3d at 435, 437 (explaining that a class action is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment and is not meant to alter the parties' burdens of proof, right to a jury trial, or the substantive prerequisites to recovery); *see also Exxon Mobil Corp. v. Gill*, 299 S.W.3d 124, 126 (Tex. 2009) (stating that the substantive law must be taken into consideration in determining whether the purported class can meet the certification prerequisites under rule 42); *Union Pac. Res. Grp. v. Hankins*, 111 S.W.3d 69, 72–73 (Tex. 2003) (stating that "[b]y choosing to delay analysis of *Yzaguirre* until 'another stage of litigation,' the court of appeals ignored applicable substantive law crucial to understanding the claims and defenses," and requiring that the substantive law in *Yzaguirre* be taken into consideration "in determining whether the purported class can meet the certification prerequisites"). When a class has been certified based on a significant misunderstanding of the law, remand to the trial court is appropriate so that it may determine the effect on the requirements for class certification. *Gill*, 299 S.W.3d at 129 (vacating the trial court's class certification order and remanding the case to the trial court for further proceedings).

### 2. Statutory and Contractual Duty Claims

Hackett argues that CoServ owes its members statutory duties under sections 22.152–.154, 22.158, and 22.351 of the business organizations code

14

and sections 161.070 and 161.072 of the utilities code and contractual duties under CoServ's bylaws. The first portions of these claims present a question of statutory interpretation.

When a general statutory provision conflicts with a special statutory provision, both provisions shall be construed, if possible, to give effect to both; but if the conflict is irreconcilable, the special provision prevails absent certain exceptions. *Chesser v. LifeCare Mgmt. Servs., L.L.C.*, 356 S.W.3d 613, 620 (Tex. App.—Fort Worth 2011, no pet.); *see also* Tex. Gov't Code Ann. § 311.026(b) (West 2005) (stating that the special provision prevails as an exception to the general provision unless the general provision is the later enactment and the manifest intent is that the general provision prevail).

We note initially that section 2.010 of the business organizations code states that "[a] nonprofit corporation may not be organized or registered under this code to conduct its affairs in this state to: (1) engage in or operate as a . . . rural electric cooperative corporation." Tex. Bus. Orgs. Code Ann. § 2.010(1) (West 2011) (setting out a list of cooperative associations); *see also* Tex. Att'y Gen. Op. No. DM-479 (1998), *available at* 1998 WL 346647, at *2 (noting that since 1959, the Non-Profit Corporation Act has expressly excluded from its application cooperatives organized for particular purposes, including rural electric cooperatives, because each one of the excluded corporations is provided for and may be incorporated under a specific statute).

15

The ECCA specifically governs electric cooperatives. *See* Tex. Util. Code Ann. §§ 161.001–.254. Section 161.005 provides, "This chapter is complete in itself and is controlling," and the powers of electric cooperatives are solely derived from and measured by the ECCA. *Id*. § 161.005; *Hilco Elec. Co-op., Inc. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 77–81 (Tex. 2003) (reviewing electric cooperatives' purposes and powers under the ECCA); *see also* Mariko Kikawa, *Hilco Electric Cooperative v. Midlothian Butane Gas Co.: A Look at Electric Cooperatives in Texas*, 57 Baylor L. Rev. 461, 465 & n.14 (2005) (noting that unlike the statutory provisions governing other cooperatives in Texas, the ECCA does not contain supplemental provisions integrating sections of the Non-Profit Corporation Act or general corporation law to fill any gaps in the statute); *cf.* Tex. Agric. Code Ann. § 51.002 (West 2004) (stating that the state's general corporation laws govern agricultural cooperative societies unless those laws conflict with chapter 51 of the agriculture code), § 52.004 (West 2004) (stating same with regard to cooperative marketing associations), § 55.003 (West 2004) (stating that in addition to the requirements under the state's general corporation laws, the articles of incorporation of a cooperative credit association must state that the association may not obtain loans for, make loans to, purchase notes from, or discount notes for a person who is not a member of the association); Tex. Health & Safety Code Ann. § 301.003 (West 2010) (stating that eligible institutions creating a hospital laundry cooperative association may file articles of incorporation under the state's general corporation law), § 301.033 (West 2010)

16

(stating that eligible institutions creating a miscellaneous health-related cooperative association may prepare and file articles of incorporation under the state's general corporation law); Tex. Util. Code Ann. § 162.079 (West 2007) (stating that the Non-Profit Corporation Act applies to a telephone cooperative in the same manner as if the cooperative had been formed under the Texas Non-Profit Corporation Act).

The legislature passed the ECCA in 1937 to provide for the organization of cooperative, nonprofit membership corporations for the purpose of engaging in rural electrification. Act of Mar. 30, 1937, 45th Leg., R.S., ch. 86, § 3, 1937 Tex. Gen. Laws 161, 161–62, *repealed and recodified by* Act of May 8, 1997, 75th Leg., R.S., ch. 166, §§ 1, 9–10, 1997 Tex. Gen. Laws 713, 947–57, 1018 (current version at Tex. Util. Code Ann. §§ 161.001–.254); *Tri-Cnty. Elec. Co-op. v. Clair*, 217 S.W.2d 681, 682 (Tex. Civ. App.—Fort Worth 1949, writ ref'd n.r.e.). The ECCA was recodified in 1997 without any substantive changes. *See* Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 10, 1997 Tex. Gen. Laws 713, 1018.

The ECCA, however, does not always control. *See Tri-Cnty. Elec.*, 217 S.W.2d at 683. In 1949, in a personal injury suit involving nonfatal electrical-burn injuries, we held that former article 1528b, section 36 of the ECCA[10] did not

---

[10]Article 1528b, section 36 of the revised civil statutes was the predecessor to section 161.005 and stated, "This Act is complete in itself and shall be controlling. *The provisions of any other law of this State except as provided in this Act, shall not apply to a corporation organized, or in process of organization, under this Act.*" Act of Mar. 30, 1937, 45th Leg., R.S., ch. 86, § 36, 1937 Tex. Gen. Laws 161, 170 (emphasis added), *repealed by* Act of May 8, 1997, 75th

17

control because it did not purport to regulate the height of transmission lines or contain safety measures of any sort. *Id*. We stated, "It is not reasonable to suppose that the Legislature by the enactment of the above quoted Section 36 intended to exempt corporations organized under said statute from general police or safety regulations of the kind provided for" in article 1436a, section 1.[11] *Id*. *But see Rothwell v. Lone Wolf Elec. Co-op., Inc.*, 444 S.W.2d 197, 198–99 (Tex. Civ. App.—Eastland 1969, writ ref'd n.r.e.) (stating that the business corporations act and its amendments were inapplicable to the ECCA with regard to breach of employment contract issue because the ECCA had a specific provision addressing the issue and the other act expressly declared that it did not apply to co-ops and provided that it would apply only if the special statute applying to the excepted domestic corporations—like co-ops—contained no provisions with regard to some of the matters provided for in the business corporations act).

Unlike *Tri-County Electric*, this is not a personal injury suit involving standards of construction, operation, and maintenance of electric lines. *Cf*. 217

---

Leg., R.S., ch. 166, § 9, 1997 Tex. Gen. Laws 713, 1018. The Public Utility Regulatory Act repealed the second sentence in article 1528b, section 36. *Cent. Power & Light Co. v. Pub. Util. Comm'n of Tex.*, 649 S.W.2d 287, 289 (Tex. 1983) (holding that a legislature cannot prevent future legislatures from amending or repealing a statute).

[11]Then-article 1436a, section 1 of the revised civil statutes provided that certain electric lines shall be maintained at a height above the ground of at least twenty-two feet or be placed in underground pipes. *See* Act of May 19, 1949, 51st Leg., R.S., ch. 228, 1949 Tex. Gen. Laws 427, 427, *repealed by* Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 9, 1997 Tex. Gen. Laws 947, 1018 (current version at Tex. Util. Code Ann. § 181.045); *Tri-Cnty. Elec.*, 217 S.W.2d at 683.

S.W.2d at 683. Further, two of the business organizations code provisions that Hackett lists to support her argument are duplicated in the ECCA. That is, Hackett argues that CoServ owes statutory duties to its members under the following sections: section 22.152, which states that members of a nonprofit corporation are not personally liable for a debt, liability, or obligation of the corporation; (2) section 22.153, which provides for an annual meeting; (3) section 22.154, which provides legal recourse for a member if the nonprofit corporation's board of directors fails to call the annual meeting of members when required; (4) section 22.158, which provides for the preparation and inspection of a list of voting members, including the voting members' addresses; and (5) section 22.351, which provides for a member's right to inspect books and records. *See* Tex. Bus. Orgs. Code Ann. §§ 22.152–.154, .158, .351.

However, utilities code section 161.060 provides that a member is not liable for a debt of an electric cooperative except for (1) a debt contracted between the member and the cooperative or (2) an amount not to exceed the unpaid amount of the member's membership fee. *Compare* Tex. Bus. Orgs. Code Ann. § 22.152, *with* Tex. Util. Code Ann. § 161.060. And utilities code section 161.067 provides for an annual meeting. *Compare* Tex. Bus. Orgs. Code Ann. § 22.153, *with* Tex. Util. Code Ann. § 161.067 (stating where and when an electric cooperative will hold its meeting and setting out who may call a special meeting of the members). In light of utilities code section 161.005, which provides that the ECCA is complete in itself and controlling, and because the

19

utilities code contains more specific provisions addressing the same items in business organizations code sections 22.152 and 22.153, the utilities code provisions must control. *See* Tex. Gov't Code Ann. § 311.026(b). Therefore, neither Hackett nor the purported class has a substantive claim based on business organizations code sections 22.152 and 22.153. We sustain this portion of CoServ's fourth issue.

Further, nothing we have reviewed so far has indicated that the legislature meant to incorporate general provisions of the business organizations code into the ECCA. *Cf.* Tex. Agric. Code Ann. §§ 51.002, 52.004, 55.003; Tex. Health & Safety Code Ann. §§ 301.003, 301.033; Tex. Util. Code Ann. § 162.079. Therefore, we will next review the nature of the electric cooperative and the ECCA to determine whether the exclusion of business organizations code sections 22.154, 22.158, and 22.351 from the ECCA was intentional.

### a. Electric Cooperatives

In a 1998 letter ruling, the attorney general reviewed what constitutes a "cooperative" and described it as "a corporation or association organized for the purpose of providing economic services, without gain to itself, to shareholders or members who own and control it," with the defining characteristic of being obliged to distribute net proceeds to its members in the form of patronage refunds or dividends in amounts determined by the use made by the members of the association facilities. Tex. Att'y Gen. Op. No. DM-479 (1998), *available at* 1998 WL 346647, at *1 (citing *United Grocers, Ltd. v. United States*, 186 F.

Supp. 724, 733 (N.D. Ca. 1960), *aff'd*, 308 F.2d 634 (9th Cir. 1962), and Roswell Magill & Allen H. Merrill, *The Taxable Income of Cooperatives*, 49 Mich. L. Rev. 169, 173–74 (1950)). Additional characteristics that distinguish cooperatives from other business structures include "the features of democratic control and voting; distribution of economic benefits on an equal basis or proportionate use made of association facilities; limited return on capital; and of transaction of business with their own members." *Id*.; *see also United States v. Miss. Chem. Corp.*, 405 U.S. 298, 311, 92 S. Ct. 908, 915 (1972) (observing that "the essential nature of cooperatives and corporations differs").

Cooperatives operate on different foundational principles than corporations. *See Miss. Chem.*, 405 U.S. 298, 308 n.14, 92 S. Ct. at 914 n.14 ("Cooperatives and corporations operate on different principles. Whereas the corporate structure separates control and management, the essence of a cooperative requires that these functions be integrated."); *see also* Steve F. Brault, *Equity Financing of Cooperatives: Advantageous Federal Securities Law and Tax Treatment*, 21 Willamette L. Rev. 225, 226 (1985). Specifically, these principles, called the "Rochdale Principles," are the principles that "have guided the formation of cooperative businesses throughout the world and serve as the essential identifying characteristics of cooperative business organizations." Brault, 21 Willamette L. Rev. at 226. The Rochdale Principles are open membership; democratic control; limited return on member capital; use of new

21

savings for development, common services, and distribution of patronage refunds; cooperative education; and cooperation among cooperatives.[12] *Id.*

In comparing cooperatives to corporations,

> consider the structure of a typical business corporation.
>
> Persons wishing to become equity participants in a corporation buy stock. This stock gives the owners the right to elect directors, generally on the basis of the number of shares owned. Share ownership also entitles the equity participants to share in earnings on a pro rata basis. Absent agreement among the shareholders to the contrary, shares are freely transferable, and capable of appreciating in value. These are, in fact, the essential attributes of corporate "stock" identified by the United States Supreme Court in the context of determining when "stock" will be considered to be a security.
>
> Cooperatives do not generally share these characteristics. First, cooperatives may or may not issue "stock" to their members; equity participation in a co-op can take many different forms. In addition, while members may be required to buy some sort of "membership interest" as a condition to joining the cooperative, the majority of a traditional cooperative's equity comes from retained patronage dividends rather than external "investment." Finally, even where "stock" is purchased, its function is typically only to give members the right to use the co-op's services and facilities. It does not determine voting rights or the right to share in profits from the venture, if any. Cooperatives generally operate on a one-vote per member basis, regardless of the relative investment of the members or the number of shares or membership interests owned. Similarly, although members generally have equal voting rights in the cooperative, member income is based on patronage rather than equity ownership. Distributions upon dissolution are also based on patronage rather than the members' proportionate capital investment. In addition, membership rights, however denominated,

---

[12]Texas Electric Cooperatives—a lobbying organization for cooperative electric utilities in Texas—adds "concern for community" to the list. *See* Tex. Electric Cooperatives, *The Seven Cooperative Principles*, *at* http://www.texas-ec.org/about_tec/the_seven_cooperative_principles/ (last visited May 7, 2012).

are not usually freely transferable and typically do not have the potential for appreciation.

In evaluating the characteristics of a cooperative, it has been said that:

> Any definition of a cooperative must account for four operationally-unique cooperative principles. First, cooperatives are owned and democratically controlled by the producers who use their services. Second, the cooperative distributes its net income to producers in proportion to their use of the cooperative. Third, returns on ownership capital are limited. Fourth, producers who use the cooperative substantially finance its operation.

This litany of attributes makes for ready comparison with the traditional, for-profit corporate form. In the case of a corporation, shareholder-owners generally have one vote per share, meaning that voting rights are held proportionately to each shareholder's equity investment in the enterprise. In addition, a shareholder's equity interest is typically acquired through investment in the stock itself, although the stock may (and hopefully will) appreciate in value. The investment may be recouped through dividends or upon sale of the appreciated stock on the open market. Most stock is not redeemable, nor is redemption the typical way in which the value of an investment in corporate stock is realized. In general, therefore, a stockholder's income is generally based on stock ownership, as is the stockholder's right to participate in distributions upon dissolution and liquidation. The shares are generally freely transferable, unless the shareholders have agreed to limit this right. Moreover, there is generally no requirement that the owners of a business corporation "use" the corporation's facilities or products.

Thus, none of the essential attributes of the cooperative form of business fit the traditional corporate model. This fact explains why some commentators have complained that "viewing a co-operative as a corporation distorts its true nature because an ordinary corporation may exist and operate from its own detached power base whereas a co-operative cannot exist apart from a body of people who are its members."

23

Carol R. Goforth, *Application of the Federal Securities Laws to Equity Interests in Traditional and Value-Added Agricultural Cooperatives*, 6 Drake J. Agric. L. 31, 39–41 (2001) (citations omitted).

### b. The ECCA

The ECCA defines a "member" as "a person admitted to membership in the electric cooperative as provided by Section 161.065." Tex. Util. Code Ann. § 161.002(5); *see also* Rep. Jim Cooper, *Electric Co-operatives: From New Deal to Bad Deal?* 45 Harv. J. on Legis. 335, 337 (2008) ("Electric co-ops are owned by their customers, who are called 'members' of the co-op due to their dual role as customer/owner."). Section 161.065 states that a person is eligible to become a member if he or she has a dwelling, structure, apparatus, or point of delivery at which he or she does not receive central station service from another source and in an area where the cooperative is authorized to provide electric energy, and he or she (1) uses or agrees to use electric energy or the facilities, supplies, equipment, or services furnished by the cooperative at the dwelling, structure, apparatus, or point of delivery, or (2) is an incorporator of the cooperative. Tex. Util. Code Ann. § 161.065(a). Membership in an electric cooperative is not transferable, and a membership certificate in an electric cooperative is exempt from the Texas Blue Sky Law.[13] *Id.* §§ 161.063, .065(c).

---

[13]The Texas Blue Sky Law regulates the sale of securities in and from the state. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 441 (Tex. 2007).

The ECCA provides that an electric cooperative shall operate without profit to its members, but it also contains a statutory distribution scheme to return revenue to members. *Id*. § 161.059(a), (c)–(d). The cooperative's bylaws regulate and manage its affairs. *See id*. § 161.064 (stating that the bylaws may contain any provision for the regulation and management of the cooperative's affairs that is consistent with the articles of incorporation). And its business and affairs are managed by a board of directors, each of whom "must be a member of the cooperative." *Id*. § 161.071(a). Each member present at a meeting of the membership of an electric cooperative is entitled to one vote on each matter submitted to a vote at the meeting, although the bylaws may provide for voting by proxy or by mail. *Id*. § 161.070. Although there is very little case law interpreting chapter 161, it appears that its emphasis—as with all cooperatives—lies in member participation and ownership.

### c. Comparison

In comparison to the ECCA, the business organizations code does not require a nonprofit's board of directors to be composed of the nonprofit's members. *Compare* Tex. Bus. Orgs. Code Ann. § 22.203 (stating that a director is not required to be a member unless the certificate of formation or a bylaw imposes that requirement), *with* Tex. Util. Code Ann. § 161.071(a) (stating that each director must be a member of the cooperative). The business organizations code also sets out procedures to amend the certificate of formation of a corporation "with members having voting rights" and of one that has no members

25

or has no members with voting rights, Tex. Bus. Orgs. Code Ann. §§ 22.105, .107, and it provides that each member, regardless of class, is entitled to one vote on each matter submitted to a vote of the corporation's members, "except to the extent that the voting rights of members of a class are limited, enlarged, or denied by the certificate of formation or bylaws of the corporation," unlike the one-member, one-vote provision in the ECCA. *Compare id*. § 22.160(a), *with* Tex. Util. Code Ann. § 161.070.

There are two ECCA provisions that specifically incorporate portions of the business organizations code. *See* Tex. Util. Code Ann. §§ 161.078, .121(10). In section 161.078, the ECCA specifically incorporates the provisions of the business organizations code pertaining to mandatory and permissive indemnification, advancement of expenses, and liability insurance. *See id*. § 161.078 (incorporating former article 1396–2.22A of the revised civil statutes, now found in business organizations code sections 8.051–.052, 8.101–.105, and .151–.152, to provide that an electric cooperative may indemnify and provide indemnity insurance in the same manner and to the same extent as a nonprofit corporation under the business organizations code). In section 161.121(10), the ECCA specifically incorporates the provisions of the Non-Profit Corporation Act pertaining to its general powers to exercise "any other power, for which the cooperative is organized, including other or additional purposes that benefit members and nonmembers, either directly or through affiliates, described in Section A, Article 2.01, Texas Non-Profit Corporation Act (Article 1396–2.01,

26

Vernon's Texas Civil Statutes)." *Id.* § 161.121(10) (incorporating provisions now found in business organizations code section 22.051); *Hilco Elec. Co-op.,* 111 S.W.3d at 77 (stating that the ECCA entitles an electric cooperative to create and own a for-profit company "if necessary, convenient, or appropriate to effectuate the [ECCA's] permitted purposes: rural electrification or purposes like those listed in article 1396–2.01(A) of the Non-Profit [Corporation] Act").

Based on the nature of the electric cooperative and the specific differences set out in the ECCA as compared to the provisions of the business organizations code, as well as the fact that the legislature deliberately chose to incorporate only two specific provisions of the business organizations code into the ECCA, we conclude that the legislature did not intend to provide electric cooperative members with the same rights set out in business organizations code sections 22.154, 22.158, and 22.351. *Compare* Tex. Util. Code Ann. §§ 161.078, 161.121(10) (deliberately incorporating specific provisions of business organizations code), *with* Tex. Agric. Code Ann. §§ 51.002, 52.004, 55.003; Tex. Health & Safety Code Ann. §§ 301.003, .033; Tex. Util. Code Ann. § 162.079; *see also First Fed. Sav. & Loan Ass'n of Twin Falls v. E. End Mut. Elec. Co.*, 735 P.2d 1073, 1077–78 (Idaho Ct. App. 1987) (stating that "[o]ur Legislature evidently has determined that this type of service provider [an unregulated, private, nonprofit electric cooperative], which typically serves a limited group of customers and is owned by the customers themselves, merits a lesser degree of public intrusion"); *Hunerjager v. Dixie Elec. Membership Corp.*, 434 So.2d 590,

27

591 (La. Ct. App.) (concluding that member-plaintiffs had no statutory right to examine electric cooperative's records because although there were specific provisions for records examinations in the Business Corporation Law and Non-Profit Corporation Law, there were no sections in the Electric Cooperative Law regarding the examination of records by the membership and the Electric Cooperative Law did not provide that the business or nonprofit corporate law was supplementary to its provisions), *writ denied*, 440 So.2d 149 (La. 1983). Rectifying this situation is a task best suited for the legislature. Therefore, we sustain the portion of CoServ's fourth issue pertaining to the breach of statutory duties claim under business organizations code sections 22.154, 22.158, and 22.351.

### d. Statutory Duties under the ECCA

Hackett also contends that CoServ owes and breached statutory duties to its members under utilities code sections 161.070 and 161.072. CoServ argues that the ECCA does not confer an express private right of action on Hackett, giving her no standing to sue under the ECCA.

Standing is a prerequisite to suit before rule 42's adequacy requirement may be considered. *See M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 706, 711 (Tex. 2001) (stating that a named plaintiff's lack of individual standing at the time suit is filed deprives the court of subject matter jurisdiction over the plaintiff's individual claims and claims on behalf of the class); *see also DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) ("For

28

standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical."). A plaintiff has standing to bring suit if she has a legal right that has been breached. *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976); *McDaniel v. Town of Double Oak*, No. 02-10-00452-CV, 2012 WL 662367, at *3 (Tex. App.—Fort Worth Mar. 1, 2012, no pet. h.) (mem. op.). Without a breach of a legal right belonging to the plaintiff, no cause of action arises or can accrue to the plaintiff's benefit. *Nobles*, 533 S.W.2d at 927.

We start with the plain language of the statutes in construing them. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 422 (Tex. 2010) (op. on reh'g) (concluding that natural resources code section 85.321, entitled "suit for damages," which provides that a party "may sue for and recover damages and have any other relief to which he may be entitled at law or in equity," creates a private cause of action for damages resulting from statutory violations). "When a private cause of action is alleged to derive from a constitutional or statutory provision, our duty is to ascertain the drafters' intent." *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004) (citing *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 260 (Tex. 2002)).

Section 161.070, entitled "Voting by Members," states, "Each member present at a meeting of the members is entitled to one vote on each matter submitted to a vote at the meeting. *The bylaws may provide for voting by proxy*

29

*or by mail*." Tex. Util. Code Ann. § 161.070 (emphasis added). Section 161.072, entitled "Election of Directors; Vacancies," provides as follows:

> (a) The incorporators of an electric cooperative named in the articles of incorporation shall serve as directors until the first annual meeting of the members, and until their successors are elected and qualify. Subsequently, the directors shall be elected by the members at each annual meeting *or as otherwise provided by the bylaws*.
>
> (b) A vacancy on the board shall be filled *as provided by the bylaws*. A person selected to fill a vacancy serves until the next regular election of directors.

*Id*. § 161.072 (emphasis added).

Unlike the business organizations code provisions for nonprofit corporations, which specifically set out the procedure to enforce the right to inspect books and records and to obtain the list of voting members and the duty of the nonprofit corporation to make records, books, and reports available to the public for inspection or copying, there are no similar specific provisions set out in the ECCA, and—as previously discussed above—they are not incorporated into the ECCA. *Cf.* Tex. Bus. Orgs. Code Ann. §§ 22.158, 22.351, 22.353; *Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 414–21 (Tex. App.—Fort Worth 2011, pet. denied) (construing former articles 1396–2.23 and 1396–2.23A of the Non-Profit Corporation Act); *Lacy v. Bassett*, 132 S.W.3d 119, 121, 124 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (reviewing application of former article 1396–2.23 to church nonprofit); *Citizens Ass'n for Sound Energy (CASE) v. Boltz*, 886 S.W.2d 283, 285–86, 289–90 (Tex. App.—Amarillo 1994, writ denied)

30

(reviewing application of former articles 1396–2.23 and 1396–2.23A), *cert. denied*, 516 U.S. 1029 (1995); *see also Melissa Indus. Dev. Corp. v. N. Collin Water Supply Corp.*, 316 F. Supp. 2d 421, 426 (E.D. Tex. 2004) (construing former article 13.96–2.11B of the Non-Profit Corporation Act, which set out procedure to inspect list of voting members).

Rather, utilities code sections 161.070 and 161.072 focus attention on the bylaws rather than setting out specific provisions for legal recourse. *Cf. Hilco Elec. Co-op.,* 111 S.W.3d at 77–78 (construing utilities code section 161.121 in suit for declaratory judgment by members, some of whom were propane dealers, regarding cooperative's statutory authority to engage in propane sales).

CoServ's 2009 bylaws comply with utilities code section 161.070 with regard to voting rights.[14]  *See* Tex. Util. Code Ann. § 161.070.  Further, by their own terms, they are contractual in nature.  Therefore, Hackett's—and the putative class's—recourse, if any, would appear to be through a breach of contract claim with regard to the bylaws rather than a breach of statutory duty

---

[14]Because CoServ's bylaws were submitted as sealed records, we are not at liberty to directly discuss their contents. *See, e.g., E.F. v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00325-CV, 2011 WL 4937228, at *1, 3 (Tex. App.—Austin Oct. 14, 2011, order) (forgoing public discussion of the evidence underlying the jury and trial court decisions because the record had been sealed); *In re Energy XXI Gulf Coast, Inc.*, No. 01-10-00371-CV, 2010 WL 5187730, at *6 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, orig. proceeding) (mem. op.) ("Because the trial court reviewed [the sealed documents] in camera and they remain sealed in the record before us, we are not at liberty to discuss the contents of these documents in our opinion.").

claim with regard to the provisions in sections 161.070 and 161.072.[15] *See* Tex. Util. Code Ann. §§ 161.070, .072. Accordingly, we sustain the rest of CoServ's fourth issue as it pertains to the breach of statutory duties claim, but we overrule the portion of CoServ's fourth issue that pertains to the breach of contract claim under CoServ's bylaws.[16]

### 3. Fiduciary Duties

CoServ also argues that it owes no fiduciary duties to its members. Nothing in the ECCA provides for a fiduciary duty from the cooperative to its

---

[15]Further, Hackett testified that she had never attended CoServ's annual meeting or voted in a CoServ board election. Hackett does not explain in her brief how, even if sections 161.070 and 161.072 had provided her with a statutory cause of action, she personally would have standing to sue based on these provisions, calling into question her commonality with the class. *See Union Pac.*, 111 S.W.3d at 75 (discussing lack of commonality based on substantive causes of action).

[16]Based on our construction of the ECCA, it appears that the only recourse for Hackett and the class, if any, is through the breach of contract claim on CoServ's bylaws, although there is not much authority on the issue, and neither party briefed the issue thoroughly in this appeal. *See, e.g., Baldwin Cnty. Elec. Membership Corp. v. Catrett*, 942 So.2d 337, 345–46 (Ala. 2006) (stating that "[t]he right to vote is granted to all members of the Cooperative under the bylaws and by statute. Thus, each member of the Cooperative had a contractual right to vote," and concluding that members could bring a direct action instead of a derivative one because they were enforcing their individual rights to vote rather than a right of the corporation); *see also Matanuska Elec. Ass'n, Inc. v. Waterman*, 87 P.3d 820, 823–24 (Alaska 2004) (stating that the rules of contract interpretation applied to the interpretation of an electric cooperative's bylaws before affirming summary judgment for member who sued for violation of bylaws); *Granbois v. Big Horn Cnty. Elec. Co-op., Inc.*, 986 P.2d 1097, 1101–02 (Mont. 1999) (noting that the relationship between an electric cooperative and each of its members is contractual in nature, as defined by the cooperative's bylaws, rules, and regulations and that the bylaws, rules, and regulations—as well as their implementation—must be reasonable).

32

members. *See id.* §§ 161.001–.254. Nothing in the ECCA incorporates the provisions of the business organizations code that provide for duties of good faith and ordinary care by the "governing persons" and officers of a corporation to the corporation. *See* Tex. Bus. Orgs. Code Ann. §§ 3.102–.103 (West 2011); *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576–77 (Tex. 1963) (discussing fiduciary duties owed by corporate officers and directors to the corporation). And to the extent that a fiduciary duty might be owed by CoServ's directors to CoServ's members, Hackett and the class did not sue CoServ's directors. *Compare Wilson v. Harlow*, 860 P.2d 793, 798 (Okla. 1993) (holding no fiduciary duty at common law between utility's directors and its ratepayers because utility was not a cooperative), *cert. denied*, 510 U.S. 1117 (1994), *and Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 792 P.2d 50, 52–53, 56–57 (Okla. 1990) (remanding summary judgment on fiduciary duty issue in class action brought by utility ratepayer-member against electric cooperatives and their trustees because trustees owed fiduciary duty under Oklahoma statute and controverted issues of fact remained with regard to whether trustees had breached their fiduciary duty), *with Peoples Elec. Co-op. v. W. Farmers Elec. Co-op.*, 746 F. Supp. 2d 1202, 1206 (W.D. Okla. 2010) (stating, in dispute between two cooperatives, that "[a]n assumption that the entity itself also owes broad-based fiduciary duties runs the risk of upsetting the balance struck by director-focused standards"). *But see True v. Robles*, 571 F.3d 412, 417–23 (5th Cir. 2009) (stating that "[t]he relevant Texas statutes do not address whether the

33

directors of a reciprocal insurance exchange owe a fiduciary duty to individual subscribers, and we are not aware of any cases, in Texas or elsewhere, that do so," before concluding—after an analysis of analogous law—that there is no fiduciary or contractual relationship between individual subscribers and the board of directors).

We conclude that whether the cooperative itself owes a fiduciary duty to its members is another claim best suited for a legislative determination, and we sustain this portion of CoServ's fourth issue. *See also McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 403, 410 (6th Cir. 2006) (stating with regard to members' claims against cooperative for mismanagement, self-dealing, and breach of fiduciary duty that such claims must generally be brought as derivative actions because breaches of fiduciary duty are deemed to injure only the corporation).

## IV. Conclusion

Having overruled CoServ's third issue in part and having sustained CoServ's fourth issue in part, we vacate the trial court's class certification order and remand the case to the trial court for further proceedings without reaching CoServ's remaining issues or Hackett's issues. *See* Tex. R. App. P. 47.1; *Gill*, 299 S.W.3d at 129 (stating that when a class has been certified based on a significant misunderstanding of the law, remand to the trial court is appropriate so that it may determine the effect on the requirements for class certification).

BOB MCCOY
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

WALKER, J. filed a dissenting opinion.

DELIVERED:  May 10, 2012



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00425-CV

DENTON COUNTY ELECTRIC
COOPERATIVE, INC. D/B/A
COSERV ELECTRIC

APPELLANT AND APPELLEE

V.

NICOLE HACKETT, INDIVIDUALLY
AND ON BEHALF OF OTHERS
SIMILARLY SITUATED

APPELLEE AND APPELLANT

----------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

----------

## DISSENTING OPINION

----------

I respectfully dissent. I agree with the majority that the trial court had a duty to understand the substantive law, claims, and defenses in determining whether the purported class can meet the certification prerequisites under Texas Rule of Civil Procedure 42, but I cannot agree with the majority's holding—dispositive of the class's breach-of-statutory-duties and breach-of-fiduciary-duties

claims—that the trial court misunderstood the applicable law when we do not know that to be true based on the record before us.

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but solely whether the requirements of rule 42 have been met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S. Ct. 2140, 2152 (1974); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), *cert. denied*, 449 U.S. 1113 (1981);[1] *Exxon Mobil Corp. v. Gill*, 299 S.W.3d 124, 126 (Tex. 2009) ("'Deciding the merits of the suit in order to determine . . . its maintainability as a class action is not appropriate.'") (quoting *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 404 (Tex. 2000)). "Viability" is not a requirement for class certification under rule 42. *Clark v. Strayhorn*, 184 S.W.3d 906, 909 (Tex. App.—Austin, pet. denied), *cert. denied*, 549 U.S. 995 (2006); *see* Tex. R. Civ. P. 42. Although the supreme court has instructed us that "dispositive issues should be resolved by the trial court before certification is considered," *State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 557 (Tex. 2004), as our sister court in Austin has explained,

> *Lopez* does not create a new procedural means by which appellate courts can adjudicate the merits of dispositive issues not otherwise within their jurisdiction to consider. Instead, it envisions that such issues should be adjudicated in the trial court in the first instance, through the established procedural mechanisms under our

---

[1] Because Texas Rule of Civil Procedure 42 is patterned after its federal counterpart, federal decisions and authorities interpreting current federal class-action requirements are persuasive authority in applying rule 42. *Sw. Ref. Co., Inc. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000); *see* Fed. R. Civ. P. 23; Tex. R. Civ. P. 42.

rules—such as pleas to the jurisdiction, summary-judgment motions, and special exceptions—rather than by what are substantively the same proceedings initiated at the appellate level. *Cf. Lopez*, 156 S.W.3d at 557 (declining to reach viability issues and remanding so trial court could address pending plea to the jurisdiction and special exceptions).

Furthermore, the concept of viability addressed in *Lopez* emanates from the core requirement that, before certification, trial courts perform a "rigorous analysis" to determine whether rule 42's requirements are met. *Bernal*, 22 S.W.3d at 435. To "make a meaningful determination of the certification issues," *Peake*, 178 S.W.3d at 778, trial courts must resolve disputes affecting the underlying substantive law prior to certification because "courts can hardly evaluate the claims, defenses or applicable law without knowing what the law is."

*Texas Parks & Wildlife Dep't v. Dearing*, 240 S.W.3d 330, 357 (Tex. App.—Austin 2007, pet. denied); *see Clark*, 184 S.W.3d at 909 (interpreting trial court's order dismissing case as summary judgment, rather than order on class certification, and reviewing as such); *see also Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 428 (5th Cir. 1971) ("[T]here is absolutely no support in the history of [federal] Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings.").

Here, in this interlocutory appeal of the trial court's class certification order, the majority delves into a lengthy analysis of the interplay between the Texas Electric Cooperative Corporation Act (ECCA) and chapter 22 of the Texas Business Organizations Code and ultimately determines that the trial court

3

improperly certified the class based on a misunderstanding of the law. However, the trial court did not discuss these statutes in its order certifying the class, nor were they discussed at the hearing on the certification. We do not know if the trial court misconstrued or misapplied the applicable law. *Cf. Gill*, 299 S.W.3d at 127 (explaining, in holding that trial court misapplied case law, that trial court acknowledged and distinguished case law that was, in fact, indistinguishable); *Lopez*, 156 S.W.3d at 557 (refusing, in interlocutory appeal of trial court's certification order, to address argument that policyholders' claims on merits should be dismissed when trial court did not identify specific causes of action to be decided nor indicate how they would be tried or substantive issues that would control their disposition). In fact, in its order certifying the class, the trial court found that common questions of the class include "[w]*hether* CoServ has a statutory duty to the Voting Subclass vis-à-vis governance, director elections, and voting procedures." [Emphasis added.] Moreover, the majority's holding reaches the viability of the class's claims, a matter best addressed through established procedural mechanisms—such as pleas to the jurisdiction, summary-judgment motions, and special exceptions—that are not the basis of this appeal. *Cf. Lopez*, 156 S.W.3d at 557 (declining to reach viability issues and remanding so trial court could address pending plea to the jurisdiction and special exceptions).

For these reasons, I would overrule Appellant's fourth issue and address its remaining issues.


SUE WALKER
JUSTICE

DELIVERED: May 10, 2012