**AFFIRMED IN PART; REVERSED IN PART; REMANDED; and Opinion Filed August 22, 2023**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-22-00781-CV**

**DENNIS TOPLETZ, INDIVIDUALLY, AS HEIR OF HAROLD TOPLETZ, AND D/B/A TOPLETZ INVESTMENTS; CASEY TOPLETZ; VICKIE TOPLETZ; STEVEN TOPLETZ; MONARCH DEVELOPMENT CORPORATION; MARVIN LEVIN, INDIVIDUALLY, AND AS EXECUTOR OF THE ESTATES OF HAROLD AND JACK TOPLETZ; AND TOPLETZ, LP, Appellants**
**V.**
**JAMES CHOICE, RENEKA TOWERS, ALYSIA CROW, NENA ELDRIDGE, CAROL OSTEEN, AND RODERICK NICHOLS, INDIVIDUALLY AND AS REPRESENTATIVES OF THOSE SIMILARLY SITUATED, Appellees**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-13993**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Carlyle

This is an interlocutory appeal from an order certifying a class action for tenants' claims against their landlord. We reverse the class certification order in part, otherwise affirm the order, and remand this case to the trial court for further proceedings in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

Appellants (the Topletz parties or defendants) own and manage a number of residential properties in Dallas, including about 225 rental houses. On November 18, 2015, the City of Dallas sued them for various code violations and other matters, seeking temporary and permanent injunctive relief and civil penalties. On that same date, Topletz Investments sent a letter to its tenants with the caption "WE ARE UNDER ATTACK!!!!" The letter directed tenants to refuse to allow City inspectors to enter their houses and to tell City inspectors there were no issues with their houses that needed to be addressed.

On April 22, 2016, tenants James Choice, Reneka Towers, Alysia Crow, Nena Eldridge, Roderick Nichols, and Carol Osteen intervened in the City's lawsuit, asserting claims "individually and as representatives of those similarly situated" and requesting class certification and injunctive relief.[1] Their petition in intervention stated: (1) "[o]ver at least the past five years (and certainly more), tenants of Topletz Investments, such as Intervenors, have been parties to Topletz Investments' standard residential lease (the 'Topletz Lease' or the 'Lease')," which was "the only lease used by the Topletz Defendants"; (2) the Topletz Lease does not comply with

---

[1] The trial court granted plaintiffs' requested preliminary injunctive relief in a June 10, 2016 temporary injunction order (the temporary injunction). The Topletz parties appealed that order, and we deleted one paragraph as overly broad, affirming the remaining portions. *See Topletz v. City of Dallas*, No. 05-16-00741-CV, 2017 WL 1281393, at *6 (Tex. App.—Dallas Apr. 6, 2017, no pet.) (mem. op.). As appellees requested, we take judicial notice of the record in that prior appeal. *See Gardner v. Martin*, 345 S.W.2d 274, 276 (Tex. 1961) (court may take judicial notice of its own records in cause involving same subject matter between same or practically same parties).

–2–

property code section 92.056(g), which mandates that "[a] lease must contain language in underlined or bold print that informs the tenant of the remedies available under this section ['Landlord Liability and Tenant Remedies; Notice and Time for Repair'] and Section 92.0561 ['Tenant's Repair and Deduct Remedies']"; (3) "[t]he Topletz Lease violates section 92.006 of the Texas Property Code by, among other things, imposing duties on tenants to make any and all repairs to the leased property at a tenant's expense, absent exceptional circumstances, none which are present here," thus "giving rise to a remedy available to tenants under section 92.0563(b)"; and (4) "Defendants' strategy is to ignore or defy the law and intimidate their tenants," as demonstrated by them issuing the above-described letter that "threatens that if the tenants dare ask for repairs to be done, then Defendants will raise rents," and telling tenants "that if City of Dallas Code inspectors are allowed on the premises and repairs are required to be made that 'such items will be charged to you directly.'"

In their section 92.006 claim, the intervening tenants alleged:

Even after their building code violations were publicly exposed by the City of Dallas, Defendants became more brazen by writing their tenants suggesting Defendants and their tenants are allies. However, if a tenant thought otherwise, Defendants would retaliate by raising rents or charging excessively for any repairs.
Defendants' conduct constitutes a knowing violation of section 92.006 of the Texas Property Code. Intervenors are entitled to actual damages, a civil penalty of one month's rent, plus $2,000, and reasonable attorney's fees, pursuant to Texas Property Code section 92.0563(b).

The petition also contended that "[i]n simple terms, no proper functioning plumbing and heating, rats and other vermin, missing doors, roofs with large holes, collapsed floors, or any other hazard prohibited by the Texas Property Code is what you get as a tenant of the Defendants." The petition listed multiple violations found during a City inspection of Choice's and Towers's rented properties, including "health or safety hazards," and stated:

> Under the Topletz Lease, Choice would be obliged to repair each and every one of these violations, which undeniably affect the health and safety of an ordinary tenant, "at his own expense." Like many Topletz tenants, Choice—who has lived at his Topletz property for approximately eight years—was duped into the belief that this arrangement was legal. Choice believed there was no point in asking Defendants to make any repairs to the property, because he had been led to believe that every repair that needs to be made must be made by him and could never be the responsibility of his landlord.
>
> . . . .
>
> Towers knows very well how this works: When the counter in her kitchen disintegrated due to an ongoing plumbing problem, Topletz installed a new counter with an estimated value of approximately $300.00, but Topletz demanded $4,000.00 for the repair. In other words, Defendants' scheme is not only to illegally impose the costs of a repair on a tenant but also to inflate the costs of repair.

The intervenors asserted class certification was proper under civil procedure rules 42(b)(2) and 42(b)(3). They contended: (1) "Defendants' violations of sections 92.006 and 92.056(g) of the Texas Property Code are unlawful and by design seek to circumvent statutory laws relating to residential property rentals to tenants, which violate the rights of Intervenors and other members of the proposed Class"; (2) "Intervenors seek relief to secure redress for Defendants' uniform and common

practice as to all class members"; and (3) "[t]his action will allow an orderly and expeditious administration of the Class members' claims, economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured."

Additionally, the intervenors filed a separate motion for class certification in which they restated those arguments and sought certification of the following class:

> All persons who have entered into the Topletz Lease (as defined in this Petition) to rent any property owned or controlled or managed by any Defendant from the time period 2008 to the present, where the person signed the Topletz Lease or any other lease that fails to provide any disclosure of a tenant's rights and remedies under the Texas Property Code or imposes duties on tenants to provide all repairs.

The defendants filed a general denial and a response to the motion for class certification. They stated that because the properties in question "consist primarily of older single family dwellings or duplexes, located in less desirable neighborhoods," and many times are "a home of last resort for needy or unemployed individuals or families who might otherwise be homeless or living in group homes or other similar facilities," the defendants "have many loyal tenants" occupying the properties "despite the [properties'] age and condition."

The defendants asserted the intervenors "have alleged two causes of action on behalf of the proposed class: (1) that each of the plaintiffs' Leases violates section 92.006 of the Texas Property Code by transferring the obligation to provide a repair or remedy that affects 'the physical health and safety of the ordinary tenant;' and (2) that each of the plaintiffs' Leases violates section 92.056(g) of the Texas Property

–5–

Code because the lease agreements do not contain language in underlined or bold print (or any language whatsoever) that informs tenants of the remedies available under section 92.056 or section 92.0561 of the Texas Property Code."

The defendants contended class certification should be denied because, among other things: (1) "the claims or defenses of the representative parties are not typical of the claims or defenses of the proposed class, because all but one of the putative class representative parties were or became delinquent in the payment of rent, have been evicted for non-payment of rent and additionally have a deficiency judgment against them . . . , and are therefore subject to defenses that are not typical of the proposed class; (2) "[t]he remaining tenant, JAMES CHOICE executed his lease agreement more than 4 years before this institution of this litigation and limitations bars his claims and are therefore subject to defenses that are not typical of the proposed class"; and (3) "all remaining Topletz tenants (other than Choice) have executed new leases and have executed full releases of all claims against Defendants for independent consideration." The defendants also asserted that "[i]f a class is certified, the class should be redefined to include only those persons signing a Topletz Lease on or after April 22, 2012" and "should be further limited to those tenants who [have] not already resolved all claims arising under the Old Lease form by settlement and full release whom incurred repair expenses."

At the conclusion of the class certification hearing, the trial court requested further briefing, which both parties provided. As to the statute of limitations, the

intervenors contended: (1) they "pled two tolling grounds—the discovery rule and fraudulent concealment," which "have across-the-board application and depend on the same proof—the contents of the Topletz Standard Lease as a basis for tolling"; and (2) "it is uncontroverted that the Topletz Standard Lease on which the class claims rest is a month to month lease—renewed each month," and thus "[e]ach renewal is a new lease and restarts limitations." The intervenors also asserted that any "release defense" was "unpled" and, regardless, "could be easily addressed" because the purported releases were all executed after the temporary injunction order and "[a]ccording to the Defendants, the releases are identical, the consideration is the same, and whether the [temporary injunction] precluded Defendants from obtaining releases can all be decided by the Court."

The trial court signed a forty-one page July 18, 2020 "Order Certifying Class Action, Findings of Fact and Conclusions of Law with Trial Plan" that stated, "[t]he class claims sought to be certified are (1) violations of Texas Property Code section 92.006(e); (2) violations of Texas Property Code 92.056(g); and (3) retrospective and prospective injunction relief generally prohibiting Topletz from the violations in numbers 1 and 2 identified herein." The trial court found that intervenors Choice, Towers, Crow, and Eldridge "have standing to be members of the Class and class representatives." The trial court also found, among other things:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law and/or fact common [to] the class;

(3)     the claims of the Named Intervenors are typical of the claims (as well as the remedies) of the class;

(4)     the Named Intervenors and the Intervenors' counsel will fairly and adequately protect the interest of the class;

(5)     the prosecution of separate actions by individual class members of the class would create a risk of inconsistent or varying results/adjudications with respect to individual members which would result in incompatible standards of conduct for Topletz for the class;

(6)     Topletz has acted and/or refused to act on grounds generally applicable to the class which would make appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole; and

(7)     the questions of law and fact common to members of the class predominate over any question (including defenses) affecting only individual members, and a class action proceeding is superior to all other available methods for the fair and efficient adjudication of these claims/controversy.

Additionally, the order stated:

The [June 10, 2016 temporary injunction] preserved the status quo in terms of preventing Topletz, its agents and representatives (including its lawyers), from initiating any action that would compromise and/or prejudice Intervenors and/or the prospective class members' rights and remedies . . . .

At the class certification hearing, Topletz attempted to interject affirmative defenses of limitations and/or release but Topletz had not at the time of the hearing pled either defense. Therefore, these defenses should not be considered. But even assuming Topletz had timely and properly pled affirmative defenses, these purported defenses are common to Class members on whether claims fall outside traditional limitations and/or a tenant signed a release which according to Topletz are all identical and came after the [temporary injunction]—no earlier than 2018—and apply class wide. . . .With reference to any limitations, common to all class members outside traditional limitations are tolling doctrines such as fraudulent concealment and/or the discovery rule. To determine tolling, the TI and the Lease language will be used class wide for the Court to decide if tolling applies, and if so, how. For example,

the Court can decide by examining the Lease language which is the same for all Class members to decide as a matter of law whether the language establishes tolling.

Likewise, if release was ever pled, the Court can decide whether this defense applies by reviewing the same release language with regard to the class claims and also decide whether the TI prohibited Topletz from attempting and/or actually obtaining a release from any potential class member. These are decisions that the Court may decide as a matter of law by considering class wide proof – the Lease, the TI, and when limitations commenced and/or were tolled for the class claims.

## Standard of review and applicable law

We review a class certification order for abuse of discretion. *Mosaic Baybrook One, L.P. v. Cessor*, 668 S.W.3d 611, 617 (Tex. 2023). To maintain a class action under rule 42, plaintiffs must "meet each of the requirements under 42(a) and at least one of the requirements under 42(b)." *Id*. (quoting *Union Pac. Res. Grp. v. Hankins*, 111 S.W.3d 69, 73 (Tex. 2003)); *see* TEX. R. CIV. P. 42(a)–(b). Accordingly, all class actions must satisfy Rule 42(a)'s four threshold requirements:

> (1) numerosity—the class is so numerous that joinder of all members is impracticable; (2) commonality—there are questions of law or fact common to the class; (3) typicality—the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation—the representative parties will fairly and adequately protect the interests of the class.

*Cessor*, 668 S.W.3d at 617 (quoting *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 438 (Tex. 2007)). Litigants relying on Rule 42(b)(1) or (b)(2) must also show:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish

incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

TEX. R. CIV. P. 42(b)(1)–(2).

"Compliance with Rule 42 must be demonstrated; it cannot merely be presumed." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002). Further, "judicial analysis of whether a claim satisfies Rule 42 must be 'meaningful' and 'rigorous.'" *Am. Campus Communities, Inc. v. Berry*, 667 S.W.3d 277, 283 (Tex. 2023). "[W]hile deciding the merits of the suit in order to determine . . . its maintainability as a class action is not appropriate, the substantive law . . . must be taken into consideration in determining whether the purported class can meet the certification prerequisites." *Exxon Mobil Corp. v. Gill*, 299 S.W.3d 124, 126 (Tex. 2009) (per curiam) (cleaned up). A court must go beyond the pleadings and "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Sw. Refin. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000).

Property code section 92.006 states in part:

(c) A landlord's duties and the tenant's remedies under Subchapter B, which covers conditions materially affecting the physical health or safety of the ordinary tenant, may not be waived except as provided in Subsections (d), (e), and (f) of this section.

. . . .

(e) A landlord and a tenant may agree for the tenant to repair or remedy, at the tenant's expense, any condition covered by Subchapter B if all of the following conditions are met:

> (1) at the beginning of the lease term the landlord owns only one rental dwelling;
> (2) at the beginning of the lease term the dwelling is free from any condition which would materially affect the physical health or safety of an ordinary tenant;
> (3) at the beginning of the lease term the landlord has no reason to believe that any condition described in Subdivision (2) of this subsection is likely to occur or recur during the tenant's lease term or during a renewal or extension; and
> (4)   (A) the lease is in writing;
> (B) the agreement for repairs by the tenant is either underlined or printed in boldface in the lease or in a separate written addendum;
> (C) the agreement is specific and clear; and
> (D) the agreement is made knowingly, voluntarily, and for consideration.

TEX. PROP. CODE § 92.006(c), (e). Under property code section 92.0563(b), "[a] landlord who knowingly violates Section 92.006 by contracting orally or in writing with a tenant to waive the landlord's duty to repair under this subchapter shall be liable to the tenant for actual damages, a civil penalty of one month's rent plus $2,000, and reasonable attorney's fees." *Id*. § 92.0563(b).

Property code section 92.056 addresses a landlord's liability for failure to repair or remedy, after proper notice, a condition materially affecting the physical health or safety of an ordinary tenant. *Id*. § 92.056. Section 92.0561 provides that

"[i]f the landlord is liable to the tenant under Section 92.056(b), the tenant may have the condition repaired or remedied and may deduct the cost from a subsequent rent payment as provided in this section." *Id*. § 92.0561(a). Additionally, a tenant's judicial remedies under section 92.056 include, among other things, a judgment against the landlord for the amount of the tenant's actual damages, a civil penalty of one month's rent plus $500, and attorney's fees. *Id*. § 92.0563(a). Subsection 92.056(g) states, "A lease must contain language in underlined or bold print that informs the tenant of the remedies available under this section and Section 92.0561." *Id*. § 92.056(g).

**Analysis**

In four issues, the Topletz parties contend the trial court abused its discretion by: (1) "certifying a class action under Rule 42(b)(1) because the intervenors did not plead for the certification on that basis"; (2) "certifying a class action under Rules 42(b)(2) and 42(b)(3) because the court's analyses under these provisions were each premised on a misstatement of the elements of the intervenors' causes of action"; (3) "certifying a class action because intervenors failed to prove that the claims or defenses of the representative parties are typical of the claims or defenses of the class, as required by Rule 42(a)(3)"; and (4) "certifying a class action because it refused to consider the fact all of Topletz' current tenants had already been compensated and signed releases."

### *Rule 42(b)(1) class certification*

In their first issue, the Topletz parties challenge certification under rule 42(b)(1), arguing that appellees did not plead that rule as a basis for certification. The trial court's certification order found, among other things, that "the prosecution of separate actions by individual class members of the class would create a risk of inconsistent or varying results/adjudications with respect to individual members which would result in incompatible standards of conduct for Topletz for the class." This mirrors the language of rule 42(b)(1)(A).

The entirety of the Topletz parties' argument on this issue is as follows: "This ground for class certification was not pleaded by the intervenors, and therefore may not serve as a basis for certification. A trial judge may not grant relief in the absence of pleadings supporting that relief."[2] Appellees respond that the issue of a 42(b)(1) class was tried by consent because their live pleading stated a goal of ensuring "uniformity of decisions" and the Topletz parties "raised certification under Rule 42(b)(1) on [their] own volition at the class certification hearing" and questioned appellees' class certification expert "regarding a (b)(1) class and issues."

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised

---

[2] To the extent the Topletz parties assert new complaints regarding rule 42(b)(1) certification in their reply brief, those complaints present nothing for this Court's review. *See Sanchez v. Martin*, 378 S.W.3d 581, 590 (Tex. App.—Dallas 2012, no pet.) ("We cannot consider matters raised for the first time in a reply brief.").

by the pleadings." TEX. R. CIV. P. 67. To determine whether an issue was tried by consent, the trial court examines the record not for evidence of the issue, but rather for evidence of trial of the issue. *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied).

As described above, the live pleading asserted that "uniformity of decisions will be ensured" by the requested class action. At the class certification hearing, the following exchange took place during the Topletz parties' cross-examination of appellees' expert:

> A. . . . You don't have to proceed on any and every claim that you potentially ever have. You can decide to proceed on—and in this case, it's very narrow. But could some of the proposed class representatives that are currently living in the properties have a DTPA claim, of course, they could.
>
> They could also sue on that, but they're not—that's not what this class—the class definition or the class claims are about.
>
> Q. Doesn't that create a risk of res judicata as to those members with other claims?
>
> A. No, it does not. Because the only—the only—
>
> Q. I just—just a yes-or-no answer.
>
> A. No, it does not.
>
> Q. Is it your contention, Ms. Perry, that if a class is denied, that the—and then the intervenors, or other parties, choose to go forward, that could create inconsistent results out of separate adjudication?
>
> A. In this instance, going together as a class action is more preferable under the Rule 42 elements, than if the class was denied, and they had to go individually.
>
> > [DEFENDANTS' COUNSEL]: Object as nonresponsive.
> > THE COURT: Sustained.

Q. The question I asked you is, what is the risk of inconsistent adjudication of the narrow issue, which—

A. Okay.

Q. —you are now arguing is the basis of your claim?

A. Well, it's not my claim, it's the intervenors' claims, but the risk of inconsistent adjudications is fairly simple. It's a contract.
        One court could decide that it's not valid; other courts could decide it is valid. Therefore, you would have [in]consistent adjudications for the proposed class member, and you can have, which happens all the time in insurance context, which I deal with.

On this record, the trial court did not abuse its discretion by determining that rule 42(b)(1)(A) certification was tried by the parties' implied consent. *See* TEX. R. CIV. P. 67; *Case Corp.*, 184 S.W.3d at 771; *see also Denton Cnty. Elec. Coop., Inc. v. Hackett*, 368 S.W.3d 765, 773 (Tex. App.—Fort Worth 2012, pet. denied) (concluding unpleaded issue was tried by consent at class certification hearing where pleading provided basis and record showed parties understood matter to be at issue). We overrule the Topletz parties' first issue.

### *Causes of action*

In their second issue, the Topletz parties contend the trial court abused its discretion by certifying a class action under rules 42(b)(2) and 42(b)(3) "because the court's analyses under these provisions were each premised on a misstatement of the elements of the intervenors' causes of action." According to the Topletz parties, satisfying section 92.056(b) is a condition precedent to establishing liability under sections 92.056(g), 92.0563(b), and 92.006. And because appellees did not plead or prove that they satisfied the requirements of section 92.056(b), the trial court abused

its discretion by certifying any causes of action under chapter 92. The Topletz parties further argue that *Berry*, which the supreme court decided while this appeal was pending, would "almost certainly" be dispositive of this appeal.

*Berry* held that class certification cannot be granted for claims that are "facially defective as a matter of law." 667 S.W.3d at 279, 284. The plaintiffs in that case asked the trial court to certify a class of more than 65,000 former American Campus tenants whose leases omitted the language required by property code section 92.056(g). The plaintiffs claimed the missing lease language: (1) made American Campus strictly liable to each class member for a statutory "civil penalty of one month's rent plus $500" pursuant to section 92.0563(a)(3); and (2) amounted to a statutorily prohibited contractual waiver of American Campus's repair obligations, thus subjecting American Campus to "actual damages, a civil penalty of one month's rent plus $2,000, and reasonable attorney's fees" under section 92.0563(b).

The *Berry* plaintiffs "sought class certification based on the theory that the omission of the statutorily required lease language, standing alone, entitles each class member to recover statutory damages, penalties, and attorney's fees under sections 92.0563(a)(3) and 92.0563(b)." *Id*. at 280. Though some of the named plaintiffs alleged deficiencies in American Campus's repair of their particular apartments, they did not "allege that other class members have experienced similar problems," "did not seek certification of a class of tenants whose apartments have

not been adequately repaired," and did not "allege that any class member suffered financial damage caused by inadequate repairs or inadequate lease terms." *Id*. The trial court granted class certification.

The court of appeals affirmed the portion of the certification order authorizing class-wide litigation of the claims alleging statutory strict liability for the missing lease term. In doing so, the court of appeals considered itself prohibited, in the interlocutory appeal before it, from considering American Campus's argument that the proffered class claims are legally baseless because the property code does not create strict liability for omission of the section 92.056(g) lease language. *Id*. at 281. That argument about the nature of the plaintiffs' claims was, in the court of appeals' view, the proper subject of a non-appealable summary judgment motion by the defendant that the trial court had denied, not the appealable class-certification motion.

The supreme court concluded: (1) the property code "does not create the strict liability envisioned by the plaintiffs for the mere omission of section 92.056(g)'s required lease term"; (2) "Section 92.0563(b) authorizes a claim against a landlord who knowingly contracts to waive his statutory duties, not a claim against a landlord who fails to state his statutory duties in his leases"; (3) a court of appeals hearing a class-certification appeal must address disputes of law that are necessary to discharge its duty under rule 42 to properly understand the law governing the claim when such disputes are properly raised. *Id*. at 280, 282, 287. The supreme court held

"certification should be denied because the plaintiff has not put forward a legally viable theory of the defendant's liability to the class." *Id*. at 281.

We disagree with the Topletz parties that *Berry* is dispositive of all of appellees' claims. *Berry* stated that although property code chapter 92 "does not authorize lawsuits for the mere omission from a lease of the provision required by section 92.056(g)," it authorizes "lawsuits against landlords who contract to waive their statutory obligations." *Id*. at 287–88. Thus, although *Berry* prohibits appellees' section 92.056(g) claims based solely on the missing lease language, nothing in *Berry* suggests appellees' waiver claims under section 92.006 are not viable. In fact, *Berry* appears to acknowledge such a cause of action. *See id.* at 287 ("Section 92.0563(b) authorizes a claim against a landlord who knowingly contracts to waive his statutory duties."); *see also* TEX. PROP. CODE § 92.0563(b) ("A landlord who knowingly violates section 92.006 by contracting orally or in writing with a tenant to waive the landlord's duty to repair under this subchapter shall be liable to the tenant for actual damages, a civil penalty of one month's rent plus $2,000, and reasonable attorney's fees.").

The Topletz parties' other arguments concerning the non-viability of appellees' claims based on section 92.006 are also unavailing. The Topletz parties attach great significance to the trial court's citing section 92.006(e) as a basis for appellees' claims, arguing that section 92.006(e) is a safe harbor that does not itself establish a violation or create a private cause of action. When viewed in its proper

–18–

context, it is clear the certification order refers to a violation of section 92.006(c), which prohibits a landlord from contractually shifting to tenants the expense of repairing conditions that materially affect their physical health or safety unless all of the criteria in section 92.006(e) are satisfied. And the trial court cites 92.0563(b) as potentially providing a remedy for a knowing violation of section 92.006. The certification order is not subject to reversal merely because the trial court did not cite section 92.006(c) alongside sections 92.006(e) and 92.0563(b).

Nor are we convinced by the Topletz parties' argument that liability under section 92.006 is "expressly conditioned on the landlord first being liable for breach of his duty to repair under Section 92.056(b)." Neither section 92.006(c), which prohibits a landlord from contractually waiving its duty to repair, nor section 92.0563(b), which provides a cause of action for knowing violations of section 92.006, requires that a tenant must first establish a landlord's liability for breaching the duty to repair under section 92.056(b).[3]

Moreover, although a landlord's duty to repair is not triggered until a tenant makes an appropriate repair request, *see* TEX. PROP. CODE § 92.056(a)(1), nothing in sections 92.006 and 92.0563(b) limits the prohibition on contractual waiver to

---

[3] The Topletz parties cite two supreme court cases to support their argument, neither of which suggests a tenant must establish liability under section 92.056(b) to assert a claim under section 92.0563(b). *See Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 480 (Tex. 2016) (holding that a contractual provision shifting repair liability in violation of section 92.006 is not per se void for violating public policy and may be avoided only to the extent it impermissibly shifts a burden for which the landlord has a statutory duty to repair); *Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368, 372 (Tex. 2001) (holding that section 92.006 does not prohibit a landlord from contractually making a tenant responsible for tenant-caused damages because the landlord would have no statutory duty to repair such damages).

statutory duties that have already vested. Adopting the Topletz parties' interpretation would mean landlords could never be liable for having tenants prospectively agree to waive the statutory duty to repair unless those tenants persisted in requesting the very repairs the landlords had them contractually agree to waive. Such an interpretation is inconsistent with both the statute's plain text and the legislature's clear intent to protect tenants from landlords seeking to contractually shift the expense of repairing dangerous conditions.

In light of *Berry*, we agree appellees may not proceed with their class claims under section 92.056(g). Thus, we sustain the Topletz parties' second issue to the extent they complain that the trial court improperly certified a cause of action under section 92.056(g). We overrule the remainder of the Topletz parties' second issue.

### *Typicality and class definition*

In their third issue, the Topletz parties argue the trial court abused its discretion by certifying a class because appellees did not prove the class representatives' claims or defenses are typical of those asserted by the class. *See* TEX. R. CIV. P. 42(a)(3). Within this issue, the Topletz parties raise a number of sub-issues, some of which are unrelated to typicality, which we address in turn.

The Topletz parties first contend the "defined class is itself fatally flawed because it fail[s] to take into account the correct elements of a cause of action under Chapter 92, Subchapter B of the Texas Property Code." In support of that assertion, the Topletz parties repeat their contention that satisfying section 92.056(b) is a

condition precedent to liability for any class claim. For the same reasons explained above, we sustain the Topletz parties' challenge to the class definition to the extent the definition includes language aimed solely at appellees' claims under section 92.056(g). We overrule the remainder of this sub-issue.

The Topletz parties next contend the class definition is improper because it includes class members whose claims are barred by limitations. The class definition includes all who signed the Topletz lease "from 2008 to the present." According to the Topletz parties, the applicable four-year limitations period bars any claims accruing before April 22, 2012. Thus, they contend, the trial court abused its discretion by not limiting the class to only those who signed the Topletz lease on or after that date.

Even if we assume that the Topletz parties timely asserted their limitations defense or that appellees tried it by consent, a trial court is not required to resolve an affirmative defense on the merits before certifying a class. Rather, the trial court may address the defense in its certification order and explain how it will be tried. *See Mosaic Baybrook One, L.P. v. Simien*, Nos. 19-0612, 21-0159, 2023 WL 3027992, at *23 (Tex. Apr. 21, 2023) ("Rule 42(c)(1)(D) requires a trial court to either dispose of a defense on the merits before certifying a class or address the defense in its certification order and explain how it will be tried."). Here, despite noting that the Topletz parties did not timely plead limitations as an affirmative defense, the trial court discussed the defense in its certification order and explained how it intended

to resolve the defense post-certification. The Topletz parties do not raise and sufficiently argue any appellate issues challenging the sufficiency of the trial court's explanation in that regard; they argue only that the trial court abused its discretion by failing to restrict the class based on the merits of their limitations defense. We overrule this sub-issue.

The Topletz parties next contend "there is no factual basis to determine whether any of the four named class representatives would be members of a properly defined class" because there are no pleadings or evidence suggesting the class representatives can establish liability or avoid defenses under section 92.056(b), which the Topletz parties again assert is a condition precedent to liability for all class claims. Because we reject their argument that establishing liability under section 92.056(b) is a condition precedent to liability under section 92.0563(b), we overrule this sub-issue.

The Topletz parties next contend that because class representative James Choice executed his lease before section 92.056(g) became effective, he has no claims under that section, and thus his claims are not typical of the class's claims. Because we have sustained the Topletz parties' challenge to certification under section 92.056(g), we need not address whether Mr. Choice's 92.056(g) claims are typical of those asserted on behalf of the class. We overrule this sub-issue.

The Topletz parties next contend that Mr. Choice's claims are not typical of the class because they are barred by limitations. Even if we assume the Topletz

parties timely raised their limitations defense, "[t]he existence of a defense against a named party that may not exist against the rest of the class does not necessarily destroy typicality." *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 363 (Tex. App.—Dallas 2004, pet. denied). The limitations issue involves the application of law to established facts. There is nothing to suggest that issue would become a "focus of the litigation" that might distract Mr. Choice to the class's detriment. *See id.* We overrule this sub-issue.

Lastly, the Topletz parties assert that, because "239 of the current 240 tenants" signed releases purportedly surrendering their claims, the four named class representatives who did not sign such releases are not typical of the class. The Topletz parties provide no record support for their assertion that their current tenants "make up the vast majority of the proposed class." And in its certification order, the trial court cited evidence suggesting the class likely has at least 560 members and could have more than a thousand members. In any event, "the existence of an affirmative defense (one that may potentially affect some class members but not others) will not prevent a finding of 'typicality' or 'commonality' under rule 42(a)." *City of Dallas v. Brewster*, No. 05-00-00335-CV, 2000 WL 1716508, at *6 (Tex. App.—Dallas Nov. 17, 2000, no pet.) (not designated for publication); *see also Am. Campus Communities, Inc. v. Berry*, 646 S.W.3d 857, 867 (Tex. App.—Austin 2021) (same), *rev'd on other grounds by Berry*, 667 S.W.3d 277. We overrule this sub-issue.

### *The release defense*

In their fourth issue, the Topletz parties contend the "trial court abused its discretion in certifying a class action because it refused to consider the fact all of Topletz' current tenants had already been compensated and signed releases." Beyond the typicality argument rejected above, the Topletz parties argue that because they presented evidence suggesting all but one of their current tenants has executed a new lease with an agreement purporting to release all claims against the Topletz parties in exchange for a $50 gift card, those potential class members lack standing to assert claims in this lawsuit. From that premise, they argue that a "proposed class whose members have mostly settled their claims and lack standing should not be certified."

Curiously, despite contending that their standing argument is jurisdictional and can thus be raised at any time, the Topletz parties assert that "the validity of the settlements and releases is not for this Court to decide." Regardless, whether a binding release agreement extinguishes an unknown portion of the proposed class members' claims is a merits question that depends on the extent to which the Topletz parties pleaded and can establish release as an affirmative defense to those claims; it is not a question of constitutional standing implicating the court's jurisdiction to resolve those claims on the merits. *See* TEX. R. CIV. P. 94 (release is an affirmative defense); *Page v. 3838 Oak Lawn Ave (TX) Owner, LLC*, No. 05-21-01150-CV, 2023 WL 3316746 at *6 (Tex. App.—Dallas May 9, 2023, no pet. h.) (mem. op) (noting

that release is an affirmative defense and that the "defendant bears the burden to plead and prove the existence of an effective and valid release").

As noted above with respect to limitations, even if we assume either that the Topletz parties' pleaded their release defense or that appellees tried it by consent, the trial court was not required to resolve the merits of that defense before certifying the class. *See Simien*, 2023 WL 3027992, at *23. The trial court discussed the release defense in its certification order and explained how it intended to resolve the defense post-certification. The Topletz parties do not assert and sufficiently argue an appellate issue challenging the sufficiency of that explanation; rather, they argue that the trial court was "required to determine [the releases'] validity, and the class members' standing to sue, before granting class certification." We overrule the Topletz parties' fourth issue.

**Conclusion**

Having sustained a portion of the Topletz' parties' second and third issues challenging certification of class claims under section 92.056(g), we reverse the certification order in part and remand to the trial court with instructions to decertify the section 92.056(g) claims. Having overruled the rest of the Topletz parties' issues, we affirm the remainder of the certification order and remand the case to the trial court for further proceedings consistent with this opinion.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

220781f.p05

–25–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DENNIS TOPLETZ, INDIVIDUALLY, AS HEIR OF HAROLD TOPLETZ, AND D/B/A TOPLETZ INVESTMENTS, ET AL., Appellants

No. 05-22-00781-CV        V.

JAMES CHOICE, ET AL., Appellees

On Appeal from the 298th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-15-13993. Opinion delivered by Justice Carlyle. Justices Goldstein and Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order certifying class claims under Texas Property Code § 92.056(g). In all other respects, the trial court's order is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

Judgment entered this 22nd day of August, 2023.